## ELIPHALET W. BLATCHFORD *et al.*

*v.*

## HENRY W. NEWBERRY *et al.*

*At Springfield, January and June Terms, 1881.*

. 1. PRACTICE IN THE SUPREME COURT—*setting aside a judgment and ordering a rehearing in vacation—construction of the act of February 18, 1859.* The act of 1859, (sec. 15, ch. 37, Rev. Stat. 1874,) providing that "whenever any judgment shall have been rendered in the Supreme Court which, upon further consideration, is found to have been erroneously entered up, the judges thereof are authorized, during vacation, to change the same without ordering a rehearing thereof, by entering a proper judgment in said cause," does not authorize the Supreme Court, in vacation, to set aside a judgment previously entered, and to order a rehearing of the cause, where the judgment so entered was in conformity with the judgment which the court had rendered in the cause, and such as the court intended at the time should be entered. The statute applies only to cases where the actual judgment of the court has not been correctly "entered up" by the clerk. In acting under the statute, the inquiry is not whether the judgment as rendered or determined upon by the court was a correct judgment, but whether the judgment as *rendered* is "found to have been erroneously *entered up.*"

2. SAME—*ordering a rehearing after a term has intervened.* A cause on appeal from a decree in chancery was submitted to this court at the January term, 1878, and the opinion of the court, reversing the decree and remanding the cause, was filed on the 24th of June, 1878, and a judgment was entered accordingly. On petition of the appellees, presented at the January term, 1879, (the first term of the court after the entry of the judgment,) a rehearing was granted at the January term, 1880, and on the 2d of February, 1880, the original opinion, directing a reversal of the decree, was again approved and filed, and the same judgment was again entered in the cause. At the January term, 1881, (the June term, 1880, having intervened,) the appellees asked the court, of its own motion, to set aside the judgment entered on the 2d day of February, 1880, and to grant another hearing of the cause. The application was denied.

3. The court does not undertake to say that in no case will it, of its own motion, set aside a judgment at the second term after the same has been rendered, or grant a rehearing, but it is *held*, that when a cause has been twice deliberately heard and considered, and the same result reached at both hearings, and a judgment has been rendered and entered of record in accord with the then judgment of a majority of the court, public policy and the stability of legal proceedings demand that such judgment should not, after one entire term has intervened, be disturbed for no other cause than that

some of the judges who concurred in rendering the judgment may have changed their views of the law.

4. SAME—*of the intervening of new parties.* In a cause brought to this court by appeal, none save such as are parties to the record in this court have a right to be heard. If there are interests such as would make it proper for other parties to intervene in the cause, such intervention must begin in the court of original jurisdiction, and can not be allowed in this court.

5. SAME—*mandamus—of the character of motion to be made on application for leave to file petition.* Upon asking leave to file a petition for a writ of *mandamus* in this court, it is not necessary to couple with such application a motion that a summons or an alternative writ be awarded. Upon granting leave to file the petition, if, upon examination, it is found that sufficient cause is shown, the summons will be awarded without any special motion for that purpose.

6. SAME—*compelling court below to enter specific judgment after a general order of remandment.* On the reversal by this court of a decree of the trial court, in a suit in chancery, it was ordered: "The decree must be reversed, and the cause remanded for further proceedings in conformity with this opinion,"—the opinion of this court as pronounced upon the reversal. On application for a writ of *mandamus* to compel the trial court to dismiss the bill, on the assumption that there was nothing else for that court to do after placing the cause again upon its docket under the remandment, it was *held,* that this court had not given any specific directions as to the course the case should take, and under a remanding order of this character the court below would not be compelled to enter any particular order in the case.

APPEAL from the Circuit Court of Cook county.

In vacation after the January term, 1878,—on the 24th of June, 1878,—an opinion was filed in this cause, reversing the decree of the court below, and remanding the cause for further proceedings in conformity with that opinion,—and judgment was entered accordingly. Subsequently a rehearing of the cause was granted, under the rules of this court, and a re-argument was heard at the January term, 1880. Upon further consideration the opinion reversing the decree of the circuit court was re-filed on the 2d of February, 1880, and judgment was again entered in conformity to that decision. (99 Ill. 11.)

In vacation after the June term, 1880,—on the 14th day of July, 1880,—four of the judges of this court signed an

order setting aside the judgment entered upon the re-filing of the opinion on the 2d of February, 1880, and ordering another rehearing of the cause.

At the January term, 1881, counsel for the appellants moved the court to rescind the order made in vacation, on the 17th of July, 1880, setting aside the final judgment of this court entered on the 2d day of February, 1880.

Messrs. ISHAM & LINCOLN, for the appellants, in support of the motion:

The court had no power to make the order which was made, independent of the statute of February 18, 1859. Coke's Lit. 260 a; *Arthur Blackamore's Case,* 8 Coke's Rep. 157 a; *Tommey* v. *White,* 3 H. L. Cases, *69; *Wilson* v. *Wilson,* 5 id. *63; *Hudson* v. *Guestier,* 7 Cr. 1; *The Avery and Cargo,* 2 Gall. 389; *Jackson* v. *Ashton,* 10 P. 480; *Ex parte Sibbald* v. *United States,* 12 id. 488; *Washington Bridge Co.* v. *Stewart,* 3 H. 425; *Bank of the United States* v. *Moss,* 6 id. 38; *Brown* v. *Apsden,* 14 id. 25; *Morgan* v. *Hays,* Breese, 127; *Lampsett* v. *Whitney,* 3 Scam. 170; *Hollowbush* v. *McConnel,* 12 id. 204; *Cook* v. *Wood,* 24 id. 295; *Smith* v. *Wilson,* 26 id. 189; *Becker* v. *Sauter,* 89 id. 597; *State's Savings, etc.* v. *Nelson,* 49 id. 171; *Dunham* v. *South Park Comrs.* 87 id. 188; *Lill* v. *Stookey,* 72 id. 497; *Albers* v. *Whitney,* 1 Story, 312; *Emerson et al.* v. *Tomlinson,* 4 Greene, (Iowa,) 395; *Hungerford* v. *Cushing,* 8 Wis. *324; *The Inhabitants of Limerick,* 18 Me. 186; *Snodgrass* v. *Adams,* 7 J. J. Marshall, 165; *Bobb* v. *Bobb,* 2 A. K. Marshall, 646; *Conn* v. *Doyle,* 2 Bibb, 248; *Boyd* v. *Blaisdell,* 15 Ind. 74; *Makepeace* v. *Lukens,* 27 id. 437; *State of Wisconsin* v. *Bank,* 20 Wis. 643; *Ætna Life Ins. Co.* v. *McCormick,* id. 268; *Scheer* v. *Keown,* 34 id. 352; *Exrs. of Horn* v. *Gartman,* 1 Fla. 197; *Hill* v. *City of St. Louis,* 20 Mo. 586; Blackstone's Com. 3, *406; *Sagory* v. *Bayless,* 13 S. & M. 153; *Catlin* v. *Robinson,* 2 Watts, 373; *Stephens* v. *Cowan,* 6 id. 513; 3 Salk. 29; *Trustees Imp. Fund* v. *Bailey,*

10 Fla. 257; *Forquer* v. *Forquer*, 19 Ill. 68; *The People* v. *Quick*, 92 id. 580; *Real Estate Bank* v. *Rawdon*, 5 Ark. 576; *Rawdon* v. *Rapley*, 14 id. 205; *Askley* v. *Hyde*, 6 id. 100; *Rex* v. *Carlile*, 2 B. & A. 971.

The statute of February 18, 1859, (sec. 15, ch. 37, Rev. Stat. 1874,) makes no pretence to confer upon the court power to change any judicial action. The court had already power, as a court and when in session, to make any proper order or amendment in support of its judgment rendered, and "so that such judgment should not be reversed or annulled;" and if the judgment rendered by the court had been erroneously entered up by the clerk, it had power when in session to amend the record so as to make it express truthfully the judgment which the court actually intended to render; and all which this statute purports to do is to give power to the court to do in vacation what it already had power by other statutes, and even by the common law of this State, to do in term time and when in session.

This is the scope of the statute. It is of the same character as all other existing statutes of amendment from 14 Edward III, to the present time. Like them, its powers are bounded by two historical limitations, viz: they can be exercised only in support and affirmance of the actual judgment rendered by the court, and they do not extend to any judicial error.

Even if, under the statute, there was power to reverse or annul a judgment after the term, there was still no power to make the order which has been made in this cause. The provision of the statute is to correct the erroneous entry of the judgment by entering a proper judgment in said cause. The end of litigation is a fundamental care of the law, especially in appellate courts. There is no color of authority in this act to simply annul a final judgment, and re-open a cause for further litigation.

In the only instances in which such an order has been made by any court, it has been promptly rescinded as being

improvidently made.   *Emerson* v. *Tomlinson*, 4 Greene, (Ia.) 398; *Real Estate Bank* v. *Rawdon*, 5 Ark. 576; *Rawdon* v. *Rapley*, 14 id. 205; *Ashley* v. *Hyde*, 6 id. 99.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, Mr. WIRT DEXTER, and Mr. E. B. McCAGG, for the appellees, *contra*, contended that the act of February 18, 1859, was intended to confer, and did confer, upon this court the power to enter in vacation the order of July 14, 1880.   Counsel argued at length that the statute was passed in view of the well known practice in this court at the time, so as to enable the court to change its judgment,—not the mere entry of it, if such entry were different from what the court had actually decided, —but to change the result of the consideration of the case, so that a different judgment should be entered from that which had originally been intended to be entered.

Counsel insisted further, that the order of this court, made on the 2d of February, 1880, was not a final judgment, in any such sense as would prevent the court from modifying or changing it as it might choose;—that the court below was not commanded to enter any specific decree, but simply to proceed with the case, citing *Empire Fire Ins. Co.* v. *Real Estate Trust Co.* 1 Bradw. 391; *Thompson* v. *Sornberger*, 78 Ill. 353; *C. M. Co.* v. *Dorwin*, 25 id. 169; *Chickering* v. *Failes*, 29 id. 294; *Elston* v. *Kennicott*, 52 id. 272; *Shaw* v. *Dennis*, 5 Gilm. 421; *Grant* v. *Bennett*, 96 Ill. 523.

Per CURIAM: A judgment was rendered in the present cause, reversing the judgment below, in vacation after the January term, 1878.   Petition for rehearing was subsequently filed, and a rehearing was ordered; and the cause was thereupon re-argued at the January term, 1880.   Upon full consideration, it was then again adjudged that the judgment below be reversed, and the judgment of the court was so entered of record on the 2d day of February, 1880.   Subsequently, and after the expiration of the June term, 1880, in

the same Grand Division, four judges of this court signed an order, in vacation, setting aside the judgment rendered at the January term, 1880, and ordering a rehearing of the cause. The present motion is to vacate that order and strike the cause from the docket. There is no pretence that the judgment of the 2d day of February, 1880, was not *entered* of record as it was *rendered*, but the order was based entirely upon the fact that, upon subsequent reflection, certain members of the court who had consented to the judgment of the 2d day of February, 1880, had become dissatisfied with that judgment, and desired to hear further argument.

There is no authority for making the order so made, aside from the statute, and sec. 15 of chap. 37, Revised Statutes of 1874, contains all the statutory authority conferred upon judges of this court to make orders in vacation.

That section is as follows: "Whenever any judgment shall have been rendered in the Supreme Court which, upon further consideration, is found to have been erroneously entered up, the judges thereof are authorized, during vacation, to change the same without ordering a rehearing thereof, by entering a proper judgment in said cause; and in case a *procedendo* shall have been issued in such cause, the judges may recall the same, and by order of any of the judges, all proceedings taken by reason of such *procedendo* shall be vacated and set aside: *Provided*, that all such judgments shall be corrected within six months from the adjournment of the term at which they may have been rendered."

It will be observed that the power here assumed to be conferred upon the judges is not to grant rehearings, but when a judgment is found to have been erroneously entered up, to change the same without ordering a rehearing: The words "*rendered*" and "*entered*" are plainly used antithetically, and each in its distinctive correct legal sense,— "*rendered*" being used to indicate the giving of judgment, and "*entered*" to indicate the act of placing the judgment *ren-*

*dered* on record,—in other words, enrolling or recording it. "Erroneously *entering up* a judgment" expresses only an error in the clerical act of placing it upon the record, and implies that the judgment enrolled or recorded is not the judgment "*rendered*" or given.

The words "upon further consideration," in this connection, clearly do not mean the act of giving judgment, but simply that upon further thought and reflection it is discovered that the judgment *rendered* was erroneously—that is, incorrectly,—entered up. The further consideration is not, as contended by counsel, to be in reference to whether the judgment as *rendered* was a correct judgment or not, but whether the judgment as *rendered* is "found to have been erroneously *entered up*."

It is quite true, as the counsel argue, that the words "it is considered," are the language of courts in pronouncing judgment, but that is not the language here used. The language here being "upon further consideration," which, so far as we have discovered, is never used to express the act of rendering a judgment anew, but is always used to express the act of further thought, reflection and deliberation. The change authorized—that is, "to change the same,"—unmistakably refers back for its antecedent to the erroneous entry, and authorizes, not the *rendering*, but the *entering* of a proper judgment—that is to say, a judgment in conformity with that *rendered*.

The argument sought to be drawn from the act of 1859 empowering the judges of the Supreme Court, or any four of them, to enter orders and judgments in vacation, etc., we do not regard as of force in giving construction to this statute. The word "rendered" is not used in that statute at all, and so there is not any foundation for claiming that "entered" and "rendered" are ever used by the legislature as synonymous, and least of all where both words occur, as here, in the same sentence, and apparently each accurately in its own

distinctive sense.   The word "entered," there, doubtless means "cause to be entered," for it would seem quite clear that it intended a record of the judgment, order, etc., should be made, and not merely an announcement thereof, and this, of course, must be the act of the clerk.  But to cause an entry to be made of a judgment, in vacation, in a case which at the last term had been taken under advisement, of necessity implies that power shall be possessed to render the judgment or determine what the order shall be, and hence the power here expressly given carries with it the implied power to render the judgment, etc.   The language used, therefore, instead of proving that it means what it does not say, proves only that there is necessarily implied a power, to express which in terms would have required other and different language.

We deem it unnecessary to refer to the title of the act, or the previous practice of the court under this statute.   The language is too plain to be controlled by such considerations.

We are unanimous in these views.   The order must be vacated, and the cause stricken from the docket.

*Cause stricken from the docket.*

On a subsequent day of the January term, 1881, Mr. JAMES McCARTNEY, Attorney General, in behalf of the People, in conjunction with counsel for the appellees, presented an application asking this court, of its own motion, to set aside the judgment of this court entered on the 2d day of February, 1880, and to grant another hearing of the cause.

Messrs. ISHAM & LINCOLN, for the appellants, *contra.*

Per CURIAM:   This is an application made at this term of the court, by counsel for appellees, asking this court *now*, of its own motion, to make an order setting aside the judgment of this court entered on the 2d day of February, 1880, reversing the decree of the circuit court in this cause, and asking this court now to grant another hearing of this cause.

This cause was first submitted for our consideration at the January term, 1878, and the opinion of the court was first filed on the 24th day of June, 1878, and a judgment was at once entered of record in accordance therewith, reversing the decree and remanding the cause. On petition of appellees, presented at the January term, 1879, a rehearing was granted at the January term, 1880, and at that term the cause was very elaborately argued by counsel, and on the 2d day of February, 1880, the original opinion, directing a reversal of the decree, was again approved and filed, and the same judgment was again entered in the cause. No proceedings *in court* have been had in this suit since that time. The June term of this court has intervened without any action by the parties seeking to disturb this judgment.

We have given this application careful consideration, and we think the same can not properly be allowed.

We do not undertake to say that in no case will this court, of its own motion, set aside a judgment at the second term after the same is rendered, or grant a rehearing; but we think it would be an unwise precedent should we do so merely because the views of some of the members of the court who concurred in rendering such judgment, may have changed in regard to the law affecting the case. When a cause has been twice deliberately heard and considered, and the same result reached at both hearings, and a judgment has been rendered and entered of record in accord with the then judgment of a majority of the court, public policy and the stability of legal proceedings demand that such judgment should not, after one entire term has intervened, be disturbed for no other cause than that some of the judges may have changed their views of the law.

The Attorney General asks leave to join in this application, and insists that the public have interests involved in this cause, and he urges a rehearing that he may have an opportunity to assert, support and vindicate the same. We

are of opinion that in a cause brought here by appeal, none save such as are parties to the record in this court have a right to be heard. If the interests of the public be such that the Attorney General may properly intervene in this litigation, we think such intervention must begin in the court of original jurisdiction, and can not be allowed here.

The application is denied.

*Rehearing denied.*

Subsequently, at the June term, 1881, counsel for the appellants in this case made application for leave to file in this court a petition for a writ of *mandamus.*

The original suit, as will be seen by reference to the report of the case in 99 Ill. 11, was in chancery, instituted in the circuit court of Cook county, by Henry W. Newberry and others, claiming to be the ultimate distributees under the will of Walter L. Newberry, deceased, against Eliphalet W. Blatchford and others, the trustees appointed in the will and the widow of the testator. The purpose of the suit was to obtain a decree for the present distribution of the estate, it being alleged that the conditions necessary to such distribution were already existing, within the meaning of the will. The circuit court decreed the relief sought, but on appeal to this court the decree of the circuit court was reversed. The conclusion of the opinion in the case is as follows: "The decree must be reversed, and the cause remanded for further proceedings in conformity with this opinion," (99 Ill. 64.) It is now sought to compel the circuit court, by *mandamus*, to dismiss the bill in that suit, the cause being now upon the docket of that court under the remanding order from this court.

Mr. EDWARD S. ISHAM, in making the application for leave to file the petition, inquired of the court whether it was the proper practice to couple with the motion for leave to file the petition a motion for an alternative writ, or whether the

motion for leave should be an independent motion, and first disposed of.

CRAIG, Ch. J.: Under the practice in this court, after leave is given to file the petition, if, upon examination, it shall appear that sufficient cause is shown, we will award the summons without any special motion for that purpose.

On a subsequent day of the term the ruling of the court upon the application for the writ of *mandamus* was announced, as follows:

CRAIG, Ch. J.: A majority of the court have concluded to deny the writ. It is claimed by the relator that under the remandment of the cause to the circuit court for further proceedings in conformity with the opinion of this court, as expressed upon the reversal of the decree, there was nothing for the circuit court to do except to dismiss the bill, and as proceedings are being had in the cause in the circuit court inconsistent with such disposition of the case, this court should, by *mandamus*, compel the dismissal of the bill.

The judgment pronounced by this court, upon the reversal of the decree, did not give any specific directions in regard to the course the case should take when it was returned to the circuit court,—that court was not directed to dismiss the bill, or to enter any particular order. The judgment of this court was that the cause be remanded to the circuit court for further proceedings in conformity with the opinion of this court. Of course, if the circuit court should take any steps supposed to be contrary to law, its action can be reviewed upon writ of error or appeal. But under a remanding order of this character we do not think we would be justified in awarding a writ of *mandamus* to compel the circuit court to enter any particular order in the case.

*Mandamus denied.*