(No. 26767.—

LAWRENCE A. BARRETT, Trustee for Madison-Kedzie Trust & Savings Bank, Appellee, *vs.* MARK SHANKS.—(ALICE E. SHANKS, Admx., Appellant.)

*Opinion filed March 16, 1943.*

GUSTAV E. BEERLY, (JOHN F. TYRRELL, JOHN F. DIF-FENDERFFER, JR., and GUSTAV E. BEERLY, JR., of counsel,) for appellant.

MATTHIAS CONCANNON, R. F. BOSTELMAN, and WIL-LIAM H. DILLON, (STEPHEN R. CURTIS, and MARY M. SHAW, of counsel,) for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

A petition for leave to appeal from the Appellate Court was allowed in this case in order that a judgment of the superior court of Cook county which was reversed by the Appellate Court might be further reviewed.

On April 11, 1927, the Midwest Athletic Club borrowed $75,000 from the Madison & Kedzie State Bank due in ninety days. On the same day, Mark Shanks and twenty-four others signed and delivered to the bank their contract of guaranty as collateral to the indebtedness owed by the club. The obligation of each guarantor was several and limited to $5000. The club owned accounts receivable of $135,000 which were unpaid membership dues. Contemporaneously with the execution of the note, the athletic club executed an assignment of said accounts to the bank as collateral to its note.

Later the bank transferred its assets to the Madison-Kedzie Trust & Savings Bank and in 1930 the latter bank started this action against Shanks on the contract of guaranty. During the pendency of the litigation a liquidating

trustee was appointed for the Trust & Savings Bank. He now appears as plaintiff. Shanks died while the case was pending in the Appellate Court and the administratrix of his estate was substituted as defendant. Shanks will be referred to as defendant.

The suit having been started prior to the effective date of the Civil Practice Act, the pleadings are in conformity to the prior practice. Defendant pleaded the general issue and gave notice of certain special defenses, *viz:* (1) That the defendant's signature to the guaranty was procured through fraud and circumvention in that it was falsely and fraudulently represented to the defendant (a) that the assets of the Midwest Athletic Club exceeded its liabilities by more than $500,000; (b) that the liabilities of the club, exclusive of its building obligations, did not exceed $25,000; (c) that the guarantors on a principal guaranty of $250,000 given to Forman & Company had been released; (d) that the club had not borrowed any money for which it had pledged its accounts receivable due from memberships; (e) that sales of memberships had been made for an amount in excess of $500,000 and (2) that the guaranty contract and the contract of assignment were both executed at the same time and contemporaneously with the execution of the note, that the contracts were given as collateral to the note and that the bank received the security and property from the athletic club as an indemnity and did collect and receive under such pledge a sum sufficient to discharge the whole of the indebtedness; that the bank did not exercise proper care and diligence in the management and collection of the collateral, and by reason thereof defendant had suffered damage in excess of the amount claimed.

Prior to the present trial the cause was taken to the Appellate Court where a summary judgment was reversed and cause remanded on the ground that the pleadings presented controverted questions of fact. 300 Ill. App. 119.

In 1939 a second trial was had and at the conclusion of all the evidence both parties moved for directed verdicts. Plaintiff's motion was overruled but defendant's was allowed and after a formal verdict was returned for the defendant, the court overruled plaintiff's motion for judgment *non obstante veredicto* and for a new trial. Judgment was entered in bar of plaintiff's action and for costs. Plaintiff appealed from such judgment to the Appellate Court.

On November 20, 1940, the Appellate Court reversed and remanded the cause with directions that the issues of fact be submitted to a jury. Plaintiff's petition for rehearing was allowed. After further consideration the Appellate Court on June 25, 1941, filed a short opinion adhering to the conclusions reached in the previous opinion. A judgment was again entered reversing and remanding the cause with directions to submit the evidence to a jury. Plaintiff filed a second petition for rehearing which was allowed September 26, 1941. On March 19, 1942, the third opinion was filed, the result of which was to reverse the judgment and remand the cause with directions to enter judgment for the plaintiff for $4265.98. The opinion disposes of the fraud by stating "There is no evidence of fraud in the record. Plaintiff apparently abandoned this issue at the trial." (313 Ill. App. 598.) A petition of defendant's administratrix for rehearing was denied.

The principal grounds relied upon for reversal are: (1) that there was evidence of fraud necessitating submission of the cause to a jury and that the order of the Appellate Court directing the entry of a judgment for the plaintiff deprived defendant of the constitutional right to a trial by jury, (2) that the contract of guaranty and the assignment contract should be construed together and that when so construed the meaning and intention of the parties are so indefinite and uncertain as to require extrinsic evidence to explain, and that when construed in the light of

such evidence the law imposes the burden on the bank to collect the accounts pledged by the assignment and to apply the proceeds of such accounts to the indebtedness, and that since the bank failed in that regard the guaranty contract is discharged and cannot be enforced against the defendant, and (3) that the Appellate Court erred in entertaining and allowing plaintiff's second petition for rehearing.

In the early part of the year 1927, the athletic club, which had been organized in 1924, was constructing a club building. A part of the plan for financing the costs included the application of the proceeds of a bond issue secured by trust deed on the club property and the proceeds of sales of memberships in the club. Defendant was a member of the club and at the time of the execution of the note and guaranty contract was a director and vice-president. Alfred H. Smith was treasurer of the club and was also president of the Madison & Kedzie State Bank. On April 11, 1927, immediately prior to the execution of the guaranty contract, Smith submitted a financial statement of the condition of the club to those who signed the guaranty contract, including defendant, and such statement furnishes the basis for defendant's claim that fraud was perpetrated upon him.

The statement purports to show "in round figures" the financial condition, as of April 11, 1927, the amount required to complete the building and the availability of funds. The land, valued at $275,000 and fully paid for, was not included as an asset in the report. The construction and other costs are fixed at $1,715,000 of which there was expended to date $665,000, leaving $1,050,000 as the amount required to complete the building. Listed as available assets and to be raised was cash $690,000, accounts receivable (membership fees) $135,000, less $25,000 pledged to secure a loan, or a total of $800,000. The report contained the following entries which are unexplained in the evidence: "guaranty (balance) $175,000, 2nd mtge

bonds to be taken by contractors $150,000," total available $1,125,000. "Unsubscribed balance only $50,000, excess as stated $75,000." It contained the following statement: "Against this there are bank loans not secured by "Receivable accounts of Membership Fees, but by 2nd Mtge bonds or an excess of $25,000. This, however, is before providing for equipment and furniture, which will approximate $250,000." The remainder of the report was devoted to entries which are, as to the greater part, a mere prospectus of what Smith hoped would be realized from membership fees and other sources within the ensuing year and are not included in a way to balance any other items of the report.

Smith, as treasurer of the athletic club, submitted to the members two other financial reports, one of May 31, 1927, the other of September 30 of the same year. Defendant's administratrix argues that comparison of the report of April 11 with the other two establishes the falsity of some of the entries in the April report. She says that such comparison shows the assets of the club were not more than $500,000 over and above its liabilities; that the liabilities of the club, exclusive of building operations, exceeded $25,000 and that there was outstanding indebtedness of $573,707.45 to Forman & Company, which item did not appear in the April 11 report. Without stating the details of the two reports introduced for comparative purposes, it is sufficient to say that the comparison contended for does not serve to make the entries in the April statement stand as assertions of positive facts nor does it tend to clarify any of the entries included in the April report. It was alleged in defendant's special defense that the bank and the athletic club connived to injure and defraud the defendant. There is no evidence tending to prove such allegation. Without such proof the April report which defendant's administratrix relies upon as furnishing false information stands as a mere statement prepared by the treasurer of the athletic club for its own members and in

no way connected with the bank. It does not appear that the bank sanctioned or approved the same. Although Smith was president of the bank when the report was made, yet all that he did in preparing and submitting it to the members of the club was done in his capacity as treasurer of the club and not as president of the bank.

Where fraud is alleged it must be established by a preponderance of the evidence and the burden of proof rests upon him who charges fraud. Presumptions will not be indulged to establish fraud. It may be proved by circumstances but it is not thereby established unless the circumstances proved are so strong as to produce a conviction that the charge of fraud is true. (*Mortimer* v. *McMullen,* 202 Ill. 413; *Schroeder* v. *Walsh,* 120 id. 403; *Bryant* v. *Simoneau,* 51 id. 324.) There being no evidence tending to prove the allegation of fraud, the Appellate Court was correct in disposing of the case on questions of law.

The briefs of both parties recognize the general rule that if a person to whom a guaranty is made does any act which injures the guarantor or is inconsistent with his rights, or if such person fails to do an act enjoined upon him and such omission injures the guarantor, the latter is discharged to the extent of such injury. Defendant's administratrix invokes the rule and claims that under the contract of assignment the accounts receivable were pledged by the athletic club as collateral to the club's indebtedness to the bank and that its failure to collect and apply such accounts discharges the contract of guaranty to the extent that the guarantor has been damaged. That such is the law, unless provisions of the contract prevent its application, is well established by the cases. *Alexander Lumber Co.* v. *Aetna Accident and Liability Co.* 296 Ill. 500; *State Bank of Rock Island* v. *Bryan,* 268 id. 151; *Phares* v. *Barbour,* 49 id. 370.

Plaintiff concedes that the athletic club collected accounts receivable in excess of the amount of the indebted-

ness but contends that the terms of the contract of guaranty released the bank from the obligation that otherwise would have rested upon it. The pertinent parts of the contract of guaranty which plaintiff relies upon are: "The liability hereunder shall in no wise be affected or impaired by any acceptance by said Bank of any security for any of said indebtedness, liabilities and obligations or by any disposition of or failure, neglect or omission on the part of said Bank to realize upon any of said indebtedness, liabilities and obligations or upon any collateral or security for any or all of said indebtedness, liabilities or obligations or by any application of payments or credits thereon. * * * In order to hold the Guarantors liable hereunder there shall be no necessity or duty on the part of the said Bank to resort at any time for payment to said Debtor, or to any other person or corporation, or to all or any of said indebtedness, liabilities, or obligations or to any collateral or security or property whatsoever, and the liability of any Guarantor may, in the discretion of the Bank, be enforced without the enforcement of liability against any other Guarantor."

The provisions of the assignment contract which defendant's administratrix relies upon in support of her contentions are "That the Midwest Athletic Club * * * to secure payment of its note for Seventy Five Thousand ($75,000,) Dollars, * * * does hereby assign to Mark Shanks, * * * guarantors to the Madison & Kedzie State Bank of said indebtedness * * * and to the Madison & Kedzie State Bank as its interest may appear, all the accounts receivable of the Midwest Athletic Club, appearing on its books, being for unpaid memberships due or to become due after March 31, 1927 (less (a) any such payments as shall have been made since said date up to and including, April 11th, 1927, on any of such memberships; (b) the sum of not to exceed One Thousand ($1,000) Dollars per month for salaries, etc. necessary to

the operation of the club) or until such note for Seventy Five Thousand ($75,000) Dollars, or any renewal of the whole or any part thereof, shall have been fully paid."

The terms of the contract of guaranty excused the bank from the duty of collecting and applying the proceeds of the collateral to the payment of the note.. These terms are clear and unambiguous and there is nothing for the courts to construe. Such terms do not furnish a basis for the admission of extrinsic exidence to explain the intent of the parties. But it is said the contract of assignment executed contemporaneously with the contract of guaranty must be construed with it and that the provisions of the two contracts are so repugnant to each other that resort must be had to extrinsic evidence to ascertain the intent of the parties. It will be observed that the contract of assignment included two classes of accounts receivable, those then due and those to become due in the future. To fix a time when membership fees maturing in the future would not be included in the assignment, it was provided that it should continue "until such note for $75,000 or any renewal of the whole or any part thereof shall have been fully paid."

The clauses referred to deal with entirely different subject matters. The terms of the assignment contract make provision for the period over which the assignment shall operate, that is, it shall continue so long as any part of the note remains unpaid. As to the question presented, the contract of guaranty dealt exclusively with the degree of diligence required of the bank as to such collateral. The provision in the assignment contract does not tend to either increase or decrease the degree of diligence the law imposed upon the bank to protect the interests of the guarantors as to the collateral. In the absence of the clause in the contract of guaranty, the bank's liability to the exercise of diligence would have remained unchanged. On the other hand, the provision of the contract of guaranty which

releases the bank from the exercise of diligence as to the collateral does not affect the time provision of the contract of assignment in the slightest degree. It does not increase or decrease it. The provisions of the two contracts are not inconsistent. They may both stand and be given full effect and neither will transgress the field covered by the other. Under such circumstances the provision of the contract of guaranty must be given the effect of excusing the bank from diligence in reference to the collection and application of the accounts receivable.

The final contention of the administratrix is that the Appellate Court acted without jurisdiction when it allowed plaintiff's second petition for rehearing and that all subsequent action including the third opinion filed in March, 1942, the order entered therewith, reversing and remanding with directions to enter judgment for plaintiff, was likewise without validity. By section 79 of the Civil Practice Act (Ill. Rev. Stat. 1941, chap. 110, par. 203,) the legislature directed that the Supreme Court could, by general rule, regulate and determine Appellate practice including rehearings. Rule 44 provides that petitions for rehearing in the Appellate Court shall be governed by the rules of such courts. Rule 13 of the Appellate Court (309 Ill. App. XXVII) authorizes the filing of a petition for rehearing and regulates the time of filing and the procedure in reference thereto.

There is no provision in the rules of this court or the rules of the Appellate Court that authorizes a party who has filed one petition for rehearing, which has been allowed, to file a second petition against a later opinion which concludes with the same result as the former. This court has never permitted the practice of allowing a party to file a second petition for rehearing. The reason is well stated in *Blatchford* v. *Newberry*, 100 Ill. 484, where it was said: "When a cause has been twice deliberately heard and considered, and the same result reached at both hear-

ings, and a judgment has been rendered and entered of record in accordance with the then judgment of a majority of the court, public policy and the stability of legal proceedings demand that such judgment should not, after one entire term has intervened, be disturbed for no other cause than that some of the judges may have changed their views of the law." The same rule is announced in *Welton* v. *Hamilton,* 344 Ill. 82; *Smith* v. *Dennison,* 101 id. 657; *Garrick* v. *Chamberlain,* 100 id. 476.

In considering a somewhat similar question in *Leathe* v. *Thomas,* 233 Ill. 430, it was said: "We think that when a cause has been determined by a judgment final in its character and the petition of the unsuccessful party for a rehearing has been denied, the merits of the controversy should not be further considered by this court, upon the motion of either party, except in a case where by some inadvertence a judgment has been entered here other than the judgment which the court intended to render."

Although the practice followed by the Appellate Court finds no sanction in law, we can not agree with defendant's contention that the irregularity of allowing two petitions for rehearing by the same party was a jurisdictional matter. It was a violation of a rule that was as binding as any rule of law but it was an error as to a matter of practice or procedure and not one that affected the court's jurisdiction. *Abbott* v. *Brown,* 241 U. S. 606, 36 Sup. Ct. 689, 60 L. ed. 1199.

The scope of the inquiry does not include a case where the court has lost jurisdiction by reason of failure to file a petition for rehearing within the time prescribed by the rule. Nor is there any claim made that the judgment entered following the granting of the first petition for rehearing was not what it was then intended to be. Since it must be assumed that the plaintiff's second petition for rehearing was filed in the court within the time prescribed by the rule after the filing of the second opinion, it follows

that the court had jurisdiction to review the cause when it rendered the third opinion in March, 1942, and that the questions raised are procedural rather than jurisdictional.

Under the views expressed, the conclusion reached by the Appellate Court in the third opinion was correct although sanction can not be given to such irregular practice on petitions for rehearing. Since we find no reversible error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*