UNITED STATES of America, Plaintiff,

v.

Oscar SHIRMAN, Defendant and Third-Party Plaintiff,

v.

SECURITY BANK OF EDGEFIELD, SOUTH CAROLINA, Marvin Rifkin, and Edgefield Realty Corporation, Third-Party Defendants.

No. 64 C 1738.

United States District Court
N. D. Illinois, E. D.
Dec. 16, 1966.

Edward V. Hanrahan, U. S. Atty., for plaintiff.

George Brode, Chicago, Ill., for Oscar Shirman.

Samuel Morgan, Chicago, Ill., for Marvin Rifkin and Edgefield Realty Corp.

Paul I. Heineke, J. William Cuncannan, Heineke, Conklin, & Schrader, Chicago, Ill., for Security Bank of Edgefield (Spec. & Ltd.)

MEMORANDUM OPINION

1. Government's Motion for Summary Judgment.
2. Third Party Defendant Rifkin's Motion for Summary Judgment.
3. Third Party Defendant Security Bank's Motion to be Dismissed.

MAROVITZ, District Judge.

This action arises out of a loan in the amount of $100,000 made on July 19, 1963, to the National Steel Cabinet Co., Inc., by the Security Bank of Edgefield, South Carolina, in conformity with a participation agreement between the bank and the Small Business Administration (SBA). Pursuant to that participation agreement, it is alleged, the bank turned over to the SBA a promissory note executed by National Steel, and written guarantees of payment executed by defendants Oscar Shirman and Bernard B. Berger, and third party defendants Marvin Rifkin and Edgefield Realty Corporation.

The United States, as assignee, seeks to recover the unpaid portion of the loan, $61,375.62, plus interest thereon, which allegedly became due upon the filing of a petition for adjudication of bankruptcy by National Steel Cabinet Co., and the subsequent appointment of a trustee. Plaintiff also seeks to recover attorney's fees of $2706.53, plus interest, which were incurred by its assignor, Security Bank, in connection with satisfaction of the indebtedness and the supervision and administration of the collateral securing the indebtedness.

The government now asks this court to enter an order of summary judgment in its favor against defendant Shirman. Bernard Berger, the other named defendant, has not been located for service of summons. Shirman in reply, alleges the existence of nine genuine issues of material fact, which in his opinion, preclude the imposition of summary judgment. The issues have been voluminously briefed and documented and several affidavits have been filed.

The background facts of this litigation are important to a full understanding of the issues underlying this motion. On July 11, 1962, the Security Bank loaned the sum of $170,000 to National Steel Cabinet Company. The SBA participated in the loan to the extent of 72%. The loan was authorized by SBA for the purpose of paying outstanding accounts payable of National Steel. As collateral the Bank and SBA accepted *inter alia*: a mortgage on machinery, equipment, furniture and fixtures; written guarantees from the officers of National Steel, Shirman, Rifkin, and Berger; and the guaranty of Edgefield Realty Corporation, secured by a mortgage on land owned by Edgefield, which was leased to National Steel. Edgefield was owned in equal shares by Shirman, Rifkin and Berger, and derived its sole yearly income of $45,000 from the rental paid by National Steel.

Due to a shortage of working capital, National Steel borrowed an additional $100,000 from Security Bank on July 19, 1963. 90% of this loan was financed by the SBA. As collateral, the lenders took further mortgages on the chattels mentioned above, and similar written guarantees from Shirman, Rifkin and Berger. In addition, they took a chattel mortgage on inventory and an assignment of accounts receivable.

All of the mortgages and assignments referred to were recorded in South Carolina. Following the first loan, National Steel moved its accounting and records department to Chicago from Edgefield, South Carolina. As a condition of the second loan, National Steel agreed to return the department to Edgefield within sixty days but this was apparently not done. Allegedly because of this condition, plaintiff did not file a financing statement in Illinois covering the accounts receivable.

On January 24, 1964, National Steel filed a petition for an arrangement under Chapter XI of the Bankruptcy Act in this federal district, in 64 B 811. On February 14, the court authorized National Steel to operate its business, under the control of Nathan Yorke, a court appointed manager. The SBA and Security Bank entered the proceedings on February 24, 1964, and shortly thereafter the SBA took over the administration of the loans, and the notes and collateral were assigned to it. On March 2, the court ordered the operation of the business to cease. On April 24, on its own motion, National Steel was adjudicated a bankrupt and Nathan Yorke was appointed Trustee. By order of May 13, 1964, the plaintiff consented to the sale of the bankrupt's assets at auction, with plaintiff's liens to attach to the proceeds of sale of its collateral.

The Bankruptcy Court determined that plaintiff's lien extended to the machinery, equipment, furniture and fixtures of the bankrupt located in Edgefield, South Carolina, and to inventory located at that situs. The Trustee's objections to plaintiff's liens on accounts receivable, inventory outside of South Carolina, and some equipment located in Chicago were sustained.

The auction sale netted a bulk bid of $201,500 for all of the assets save cash, pending lawsuits and accounts receivable. The plaintiff and Trustee thereupon divided the net proceeds of the sale in proportion to the highest piecemeal bids received for their respective properties at the sale. The Trustee's share was $13,043.09, and the plaintiff's was $175,296.06. Plaintiff's share was reduced by $6500, *its* share of the costs of preserving the assets until they were sold, so that plaintiff received a total of $168,796.06. $137,845.43 of that amount was applied in full payment of the first loan, and the balance applied on the second loan. The bankruptcy proceedings were closed, and nearly all funds remaining were used to pay the costs of administration—creditors went emptyhanded.

Plaintiff, additionally, has received proceeds of insurance policies on the lives of the officers of National Steel

which were also applied to the loans. Plaintiff's accounts list the balance owing on the second loan as $61,375.62, plus interest.

It is alleged that written demand for payment of the loans was made on all guarantors on May 7, 1964, but that no payment was received. Therefore, plaintiff instituted suit against Edgefield Realty and Rifkin in a South Carolina federal court, and against Shirman and Berger in this action, both in 1964. An amended complaint was filed in this action in August, 1965, seeking recovery of the balance remaining on the second loan.

The suit against Edgefield is an action on the guaranty, and to foreclose the real estate mortgage given to secure it. On March 6, 1965, the South Carolina court ordered a release of the mortgage to allow the real estate to be sold, and ordered that plaintiff's lien be transferred to an escrow deposit of $65,000, the proceeds of the sale, which is held by the Clerk of that court.

On October 18, 1965, the South Carolina actions were stayed pending adjudication of the instant lawsuit. On February 11, 1966, by leave of this court, Shirman filed third party complaints in this action against Rifkin, Edgefield Realty, and Security Bank.

I.  The Government's Motion for Summary Judgment

■ Our present task is to determine whether any of defendant's alleged material issues of fact are sufficient to resist the instant motion. Rule 56, of course, affords an expeditious manner of deciding a dispute where the only matters in issue are matters of law. Where the pleadings, depositions, answers to interrogatories, admissions and affidavits, disclose that there is no genuine issue as to any material fact, summary judgment should be entered.

The crux of the present dispute resides in the guaranty signed by the defendant (Exhibit A). That guaranty is in writing, and is unconditional in nature, a fact seemingly uncontroverted by the defendant. He seeks to avoid liability by raising several defenses.

Initially, he argues that the first loan is as much in issue as is the second one (Issue of Fact #1), and that the Security Bank agreed on July 11, 1962, to hold him harmless, and he was assured pursuant to that agreement that his guaranty of the first loan involved no personal risk. (Shirman Affidavit, p. 4) (Issue of Fact #2). The alleged agreement apparently was not in writing.

■■ This argument requires scant consideration. It is undisputed that the present complaint seeks to recover only on the *second loan*. The "hold harmless" agreement, by the defendant's own admission, involved only the *first loan*. How defendant intends to stretch the agreement to cover the second loan is a mystery. Furthermore, the guaranty is "unconditional." Hence, such an agreement would contradict the express terms of the guaranty and being oral, even if applicable to the second loan, could not be introduced in violation of the parol evidence rule. Although certain exceptions to that rule may be asserted (See e. g. 18 I.L.P. Evidence § 271–286), none of those pertain to an oral agreement which attempts to controvert the written terms of a contract. In short, this type of situation was the moving force behind the establishment of the parol evidence rule. In this court's opinion, defendant's first two alleged issues of fact are without merit.

Secondly, the defendant argues that the SBA and its assignor, allowed three types of collateral assets to be dissipated, (bank accounts, accounts receivable, inventory), and thereby destroyed the very assets pledged to secure repayment of the loan. (Issue of Fact #3). In addition, defendant alleges that plaintiff negligently failed to create and record liens on certain assets (the ones located in Illinois), as required by its agreement

with the guarantor, which allegedly "emanated from and was dependent upon" the SBA authorizations of the loans. (Exhibits B & C) (Issue of Fact #4). It is quite clear to us that the guaranty signed by defendant contained no conditions requiring the SBA to create and record liens. The authorizations alluded to are not agreements with defendant. They are the SBA's official documents authorizing the loans and stating the requirements for SBA's participation in them. The only agreement between the plaintiff, as assignee, and defendant is the guaranty itself. And that document provides quite the contrary to defendant's position—it gives the creditor wide latitude in his dealing with collateral. Its binding force is independent of any actions taken by the creditor which affect the collateral, including the release thereof.

Plaintiff seems to effectively rebut and explain its actions with regard to the above mentioned charges. But such arguments would only create an issue of fact, not obviate the need to decide one.

In our mind, however, defendant's charges should not be considered, because regardless of their merits, they are not germane to the issue of defendant's liability under the guaranty. An examination of the relevant portions of the guaranty discloses that it is unconditional, as we have said previously. In other words, it is an absolute guaranty of payment, as distinguished from a conditional guaranty of collection. The distinction was stated in Heaston Tractor v. Securities Acceptance Corporation, 243 F.2d 196, 200 (10th Cir. 1957), quoting from Pavlontis v. Garoufalis, 89 F.2d 203, 206 (10th Cir. 1937), to be:

> " 'Contracts of guaranty are divided into two kinds. One is absolute or unconditional and the other is conditional. An absolute guaranty is an unconditional undertaking on the part of the guarantor that the person primarily obligated will make payment or will perform, and such other guar-antor is liable immediately upon default of the principal without notice. A conditional guaranty is an undertaking to pay or perform if payment or performance cannot be obtained from the principal obligor by reasonable diligence. \* \* \* (citing cases) An absolute guaranty, unlike a conditional one, casts no duty upon the creditor or holder of the obligation to attempt collection from the principal debtor before looking to the guarantor.' "

The relevant portions of the guaranty state:

> " \* \* \* The undersigned hereby unconditionally guaranties to Bank \* \* \* the due and punctual payments when due \* \* \* of the principal and interest and all other sums payable \* \* \* with respect to the note of the debtor \* \* \*."

> "The undersigned hereby grants to Bank *full power in its uncontrolled discretion* \* \* \* *to deal in any manner with* \* \* \* *the collateral,* including \* \* \* the following powers:

> \* \* \* \* \* \*

> "(d) *To consent to* the substitution, exchange, or *release* of all or any part of the collateral, whether or not the collateral, if any, received by Bank upon any such substitution, exchange, or release shall be the same or of a different character or value than the collateral surrendered by Bank;

> "(e) In the event of the nonpayment when due \* \* \* of any of the Liabilities, \* \* \* to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as Bank may elect, \* \* \* *or to forbear from realizing thereon,* all as Bank in its uncontrolled discretion may deem proper."

> "The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, *nor shall the undersigned have any rights*

*or recourse against Bank, by reason of any action Bank may take or omit to take under the foregoing powers.*

"In case the Debtor shall fail to pay all of any part of the Liabilities when due, * * * the undersigned, immediately upon the written demand of Bank, will pay to Bank the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned. Bank *shall not be required,* prior to any such demand on, or payment by, the undersigned, to make any demand upon or *pursue or exhaust any of its rights or remedies* against the Debtor *or others* with respect to the payment of any of the Liabilities, *or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral.* The undersigned shall have no right of subrogation whatsoever with respect to the Liabilities or the collateral unless and until Bank shall have received full payment of all the Liabilities.

"The obligations of the undersigned hereunder * * * *shall not be released, discharged or in any way affected* * * * *by reason of the fact that any of the collateral may be in default at the time of acceptance thereof by Bank or later; nor by reason of the fact that a valid lien in any of the collateral may not be conveyed to, or created in favor of, Bank;* nor by reason of the fact that any of the liabilities may be invalid for any reason whatsoever nor by reason of the fact that the value of any of the collateral, or the financial condition of the Debtor or of any obligor under or guarantor of any of the collateral, may not have been correctly estimated or may have changed or may hereafter change * * *." (Exhibit A) (emphasis added)

■ Many cases have adhered to the principle stated in United States v. Klebe Tool & Die Co., 5 Wis.2d 392, 397, 92 N.W.2d 868, 871 (1958), that:

"A guarantor of payment, as distinguished from a guarantor of collection, cannot avail himself of the defense that the creditor through negligence, or lack of due diligence, lost or dissipated the collateral furnished by the debtor."

See e. g., Duke v. R. F. C., 209 F.2d 204 (4th Cir. 1954); United States v. Newton Livestock Auction Market Inc., 336 F.2d 673 (10th Cir. 1964); Heaston Tractor v. Securities Acceptance Corp., 243 F.2d 196 (10th Cir. 1957). Even Barrett v. Shanks, 382 Ill. 434, 47 N.E.2d 481 (1943), cited by defendant, supports plaintiff's position. And Consolidated Factors Corp. v. Cliffo, 27 Misc.2d 887, 209 N.Y.S.2d 576 (1961), also cited by defendant as holding for the guarantor against a secured creditor, never made clear whether a guaranty of payment or collection was in issue.

In fact, defendant did not attempt to rebut this principle of law. The reason perhaps is self-evident—just as the principle itself unequivocally governs his liability.

Issue of Fact number 5 is a further amalgamation of Issues 3 and 4 and consequently must also be rejected.

■ As his next objection, defendant challenges the claim for attorneys' fees as being incurred solely by the assignor, Security Bank, and being without authorization, and as being grossly excessive. (Issue of Fact #6). This objection also fails to create a genuine issue of fact. The Note (Exhibit D, p. 2, para. 3) and the Guaranty expressly contemplate the payment of attorneys' fees incurred in connection with the satisfaction, preservation, protection of or the realization upon the collateral. Plaintiff notes in Exhibits Z1 and Z2 that though the fees were incurred by Security Bank, responsibility for them must be shared by the SBA in accordance with the participation agreements.

The fees, amounting to $2,706.93, were for services rendered in administering

and preserving the creditors' interests in the collateral in connection with the bankruptcy proceedings of National Steel. (Affidavit of Edmond Hooker, p. 5, and statements of account attached thereto). No objection can therefore be raised to the imposition of these fees.

The defendant further argues that the proceeds of those assets which were to be collateral, but as to which liens were not perfected, and which were retained by the Trustee and the proceeds used to pay expenses of administration, cannot be recouped from the guarantor. Since the costs so expended exceded the amount in issue, if defendant could prevail on this averment, he could defeat his liability hereunder. (Issue of Fact No. 7). He bases his argument upon United States v. Anderson, 226 F.Supp. 932 (D.C. Col. 1964), where a secured creditor was not permitted to recover costs of administration which had been charged to him, from the guarantor. In that case, like the instant one, the secured creditor was the SBA. In both cases it sued the guarantor of a loan following the bankruptcy of the principal debtor.

Defendant's argument would have merit if the Bankruptcy Court in the present litigation had charged the costs of administration to plaintiff. However, only $6500 was so charged, that being assessed for the "care and preservation of its collateral." (Exhibit P, p. 2 para. 9). In Anderson, the court charged the SBA with the total costs of administration, and held that:

> "The guarantors are not now obligated by the terms of the guaranties * * * to reimburse the secured creditor * * * for any amounts *other than the expenses directly connected with the auction sale of the property and that minimal portion of the expenses of reorganization, the immediate object of which was the preservation of collateral.*" 226 F.Supp. at 940 (emphasis added).

Hence under Anderson plaintiff may recoup the amount charged for the preservation of collateral, i. e. $6500. The note so provides, and the guarantor is liable for "all other sums payable * * * with respect to the note * * *." Since plaintiff was not charged with the remainder of the bankruptcy administration expenses, it is not affected by the major holding in *Anderson*. Consequently, defendant's argument is of no force, and no issue of fact is presented.

Defendant apparently misconceives the effect of the order handed down by the South Carolina District Court on March 6, 1965. That order transferred the plaintiff's lien from the real estate to a $65,000 escrow fund comprised of the proceeds of the sale of the secured real estate, in order to allow the land to be sold. Defendant argues that the order fully satisfies the debt of defendant's co-guarantor, Edgefield Realty Corporation, and as such deprives him of his right to contribution therefrom. (Issue of Fact #8).

We believe with the government, that defendant's confusion arises from the terminology employed by the able Judge Simon when he referred to the "fully satisfied * * * note and mortgage." (Exhibit T). With all respect, we are certain that the judge did not intend by that order to create a fund, as defendant claims in his brief, to "indemnify the plaintiff in its separate actions against Marvin Rifkin and Oscar Shirman (who together owned all of Edgefield Realty) should plaintiff prevail against them." (Def. brief p. 52). The petition (Exhibit U) does not reveal any such provision. Indeed the transcript of the hearing before Judge Simon resulting in this order reveals clearly that the effect of the order was to be merely to transfer plaintiff's lien to the proceeds of the sale instead of the real estate itself, *pending the outcome of that suit.* The Judge said

> "But at this particular point, if the plaintiff is giving up the lien over the property, I feel that the escrow fund should be adequate to protect it *in the*

*event it should prevail in its position."*
(p. 26 of the transcript)

\* \* \* \* \* \*

"But here you have the plaintiff with a lien on real estate, and if the Court is going to require them to release that lien on real estate, it surely seems to me that that lien should be transferred over to an adequate amount of the sales price of the property, over which the release is, *to assure it of being able to collect in the event it prevails."* (p. 27 (emphasis added both instances)

We think that indication sufficient to deny defendant's objection. Edgefield is still subject to the claim of plaintiff and consequently, *potentially* liable to Shirman as a co-guarantor. Certainly the effect of the March 6 order was merely to transfer plaintiff's lien, and not to adjudicate Edgefield's liability to plaintiff. We think it, therefore, unnecessary to consider plaintiff's argument that assuming defendant's supposition to be correct, Shirman acquiesced in the release.

■ Finally, defendant maintains that plaintiff's actions in dealing with the collateral precludes recovery of the interest due on the debt which is claimed from September 4, 1964. (Issue of Fact #9). This argument is without merit in our opinion. The cases cited by defendant, Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939), and Leverette v. United States, 159 F. Supp. 591, 141 Ct.Cl. 553 (1958), which assert that interest should not be awarded mechanically, but viewed in the light of what is fair and just, do no more than verbalize what should be inherent in any court's judgment. However, we are not bound factually by those cases. As we have already found, the guaranty is independent of any dealings by plaintiff with the collateral. Plaintiff's attempts to explain its alleged derelictions in our mind, did much to rebut the inference that it dealt wrongly with the collateral. Since this issue is equitable in nature, and since we believe plaintiff's hands to be clean, they are entitled to equal consideration herein. We must be cognizant that defendant as a part owner of Edgefield Realty is currently earning interest on the escrow fund described above. He, therefore, will not be out of pocket the entire interest cost. Finally, as the government suggests, it too must pay interest on the money it uses. Although to the average taxpayer that argument is unpersuasive, it is a fact of life, and where equities are considered, the government is in these circumstances, just another litigant. In any event, this objection cannot raise a question of fact, since the award of interest is discretionary with the court. From the affidavits and documents we are sufficiently informed to exercise that discretion. For these reasons, we must deny defendant's final argument.

Since we have decided that none of defendant's objections is sufficient to create a genuine issue of material fact, it is our duty to enter an order of summary judgment for the government for the amount of $64,082.15, plus interest from September 4, 1964.

II. The Motion for Summary Judgment of Third Party Defendants Rifkin and Edgefield Realty

Third party defendants, Marvin Rifkin, and Edgefield Realty Corporation, co-guarantors with defendant Shirman, have filed a motion for summary judgment against plaintiff and Shirman. The grounds asserted are: (1) that the bankruptcy of National Steel realized enough to satisfy the outstanding loans, but plaintiff negligently failed to perfect certain of its liens: (2) in the absence of that negligence, movants would have been liable for only minimal administration costs, but because of it the unperfected assets were used to satisfy costs of administration.

■ We think it wise at this point to decide the motion and obviate the need to

file briefs and affidavits in connection herewith. By denying defendant Shirman's similar arguments, and entering a summary judgment against him, we gave our answer to the present arguments of the third party defendants. Because of the nature of the guaranty,—an absolute guaranty of payment—these arguments are futile. Therefore, the instant motion must be denied, and third party defendants, Rifkin and Edgefield Realty are directed to answer the third party complaint within 15 days.

### III. Motion to Dismiss Third Party Defendant Security Bank

Third party defendant, Security Bank of Edgefield, the assignor of the disputed notes, has moved to be dismissed from this action on the ground that the third party complaint fails to allege that the cause of action arose out of acts taking place in Illinois, as is required by the Illinois "long arm" statute, Ill.Rev.Stat. c. 110, Sec. 17(3). Service of process was made at the Bank in South Carolina.

Shirman argues that the doctrine of ancillary jurisdiction is peculiarly applicable to third party practice, and therefore, that no independent ground of jurisdiction is necessary to maintain his third party action.

We agree generally with his premise. However, the issue before us under these circumstances is not one of jurisdiction, but one of proper service of process. Shirman quotes liberally from 1A Barron & Holtzoff, Federal Practice and Procedure, Sec. 424 (1960), in support of his ancillary jurisdiction argument. A reading of that entire section reveals a more pertinent statement:

"Personal jurisdiction over the third party defendant must however, be secured by proper service of the third party summons, which cannot be had outside the territorial limits of the state in which the main action is pending, unless statutory authority permits wider limits of service."

Of course, a 1963 amendment to Rule 4 (f) of the Federal Rules instituted the 100 mile extraterritorial service of process provision. But service in South Carolina does not satisfy that criterion. Thus the only basis upon which service would be proper in this case is if it complied with the Illinois "long arm" statute. Under Sec. 17(2), out of state service is proper if made upon "any person who is subject to the jurisdiction of the courts of this State, as provided in this Section." Section 17(1) creates jurisdiction over any person who does one of four enumerated acts within the state, and Sec. 17(3) makes clear that the cause of action must arise out of acts enumerated in Sec. 17(1).

The instant third party complaint, which seeks recovery for Security Bank's alleged agreement that Shirman would be subject to no personal risk under the guaranty, does not allege that the cause of action arose out of acts occurring in Illinois. The only Illinois activity alleged by the complaint, is that Security participated in the filing of the aforesaid bankruptcy petition of National Steel in this District. It is clear that such an activity does not constitute a wrongful act under these circumstances. Indeed, Shirman does not so allege. Whether or not such an activity would constitute such a "minimum contact" as to meet the test of Gray v. American Radiator and Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761 (1961), is not important to this case, and is unnecessary to decide. That the cause of action sued upon did not arise out of the Bank's sole activity in Illinois cannot be disputed. By admitting that "the requirement of a reasonable method of notification has been met in this instant case," Security does not and presumably had no desire to curtail our examination of the service of process issue.

It is our conclusion, therefore, that since the requirement of Sec. 17(3) has not been met, service of process here is improper, and third party defendant Security Bank must be dismissed from this action, without prejudice.