**UNITED STATES of America,** Appellant,

v.

**NEWTON LIVESTOCK AUCTION MARKET, INC., Jeff H. King, Sr., President, Jeff H. King, Jr., Secretary-Treasurer, Newton Industrial Foundation, Inc., Sammie C. Hill, Russell Ellsaesser, W. G. Conner and Florence Conner; Jeff H. King, Jr., and Marion King, Jeff H. King, Sr., and Mildred King, Appellees.**

No. 7602.

United States Court of Appeals Tenth Circuit. Sept. 16, 1964.

John C. Eldridge, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Newell A. George, U. S. Atty., and Alan S. Rosenthal and Kathryn H. Baldwin, Attys., Dept. of Justice, were on the brief), for appellant.

George Stallwitz, Wichita, Kan., for appellees Newton Livestock Auction Market, Inc., Sammie C. Hill, and Russell Ellsaesser.

Malcolm Miller, Wichita, Kan. (Robert C. Foulston, Wichita, Kan., was with him on the brief), for appellees Jeff H. King, Sr., Mildred King, Jeff H. King, Jr., and Marion King.

Roy H. Wasson, Wichita, Kan., filed a statement on behalf of appellees W. G. Conner and Florence Conner.

No appearance for appellee Newton Industrial Foundation, Inc.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The Small Business Administration (SBA), an agency of the United States, loaned $120,000 to appellee Newton Livestock Auction Market, Inc., (Newton). The loan was secured by mortgages on Kansas real and chattel property and by three separate guaranty agreements, each for $40,000. The guaranties were made by Jeff H. King, Sr., and his wife Mildred, by Jeff H. King, Jr., and his wife Marion, and by W. G. Conner and his wife Florence, all of whom are appellees and are herein referred to jointly as guarantors.

Newton failed to pay any part of the principal. The United States sued the guarantors in three separate actions. Later, on June 30, 1961, the United States sued to foreclose its mortgages and joined as defendants Newton, the guarantors, a junior lien holder, and two lessees. The four actions were consolidated without objection. Sale of the real property was ordered; and at the sale the property was bid in by SBA for $43,000. The United States moved for confirmation of the sale; Newton and the guarantors objected. At the subsequent hearing evidence showed that after the judgment of foreclosure, but before the sale, the property was damaged to the extent of $30,000 by a severe windstorm. At the time of the storm SBA did not have possession of the mortgaged premises.

The mortgages required Newton to insure the property. After the foreclosure action was brought Newton notified the insurance carrier that it could not pay a premium due. The insurer presented the question of insurance to representatives of SBA who replied by letter that the policies should lapse and that "the Government is its own insurer in all cases and agencies." The termination of the policies occurred more than six months before the storm damage.

The trial court held that the fair value of the property at the time of the sale was $108,000 and gave the United States the option of moving for a second sale with an upset price of that amount or of having the judgment credited therewith. The United States accepted the alternative of crediting the judgment and does not attack this portion of the judgment.

On the matter of the storm loss the trial court held that SBA, having elected to become a self-insurer "assumed the obligation of applying the amount of damages caused by storm hazards to the debt so guaranteed." The court ordered that the United States "apply such part of the sum of $30,000 as proceeds from the self-insured loss which occurred as a result of the storm of May 24, 1962, to plaintiff's judgment which together with the upset price of $108,000 is necessary to fully satisfy the judgment."

The trial court also held that interest was due from the United States on the $138,000 which the court ordered credited on the indebtedness and that such interest and that due from Newton should be offset from the date of the sale to the date when the $138,000 was credited. The merits of the appeal concern those portions of the judgment relating to the $30,000 credit for the storm loss and to the offsetting of interest.

 Newton has moved to dismiss the appeal on the ground that the United States has acquiesced in, and accepted the benefits of, the judgment by crediting the $108,000 instead of having a second sale of the property. The theory is that evidence showed the appraised value of the property to be over $140,000 and the United States received a benefit by the permission to credit the judgment with $108,000. Newton did not attack, by objection or appeal, the finding that at the time of the sale the property had a fair value of approximately $108,000. In the absence of a showing that a second sale might have brought a price over

$108,000 the claim of benefit to the United States does not rise above speculation. Even if the permission to credit the upset price was a benefit to the United States, the rule is that when a judgment adjudicates separable or divisible controversies, a party may accept benefits of the separate features of the judgment and challenge the features adverse to him.[1] The motion to dismiss is without merit.

The trial court did not make clear the legal theory which it applied in obligating the United States to credit against its judgment the $30,000 storm damage. The positions of the mortgagor, Newton, and of the guarantors are different and require different treatment. We first consider the situation of the mortgagor.

The question is not the application of proceeds from an insurance policy but whether the United States did effect, or had an obligation to effect, insurance on the property for the benefit of the mortgagor. The mortgagor was required to keep the property insured. If it did not, the United States as mortgagee had the option to effect insurance; and the cost incurred was an additional lien against the property. Newton does not claim that the United States was under any contractual duty to insure the property for Newton's benefit. Instead it asserts that the United States undertook to insure the property and thereby became liable to it. This argument relies on the letter from an SBA official to the insurance carrier authorizing the lapse of the policies and stating that the United States is its own insurer.

 Insurance and self-insurance are not equivalents. Insurance exists when a contractual relationship between the insurer and the insured shifts to the insurer the risk of loss of the insured.[2] Self-insurance is the assumption of risk of his own loss by one having an insurable interest. All that the United

1. Luther v. United States, 10 Cir., 225 F. 2d 495, 497, certiorari denied 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825.

2. See Epmeier v. United States, 7 Cir., 199 F.2d 508, 509-510.

States did was to elect to bear the risk of possible loss of part of its security.

■■ The statutory power of SBA to insure [3] and the contractual right of SBA to insure and charge the cost to the mortgagor did not require SBA to insure for the benefit of the mortgagor. The policies lapsed when Newton failed to pay the premiums; the SBA was under no obligation to insure; and it did nothing more than assume the hazard of impairment in value of its collateral.[4] Newton, the mortgagor, is entitled to no credit on the judgment because of the storm loss.

■■ On the theory of increased risk the guarantors contend that they were released, either fully or to the extent of the storm damage, by the action of the United States in permitting the insurance to lapse. Their reliance on "equities" and general principles of law are unpersuasive because their rights and liabilities are fixed by the contracts of guaranty. The risk of the guarantors was not increased because their obligations were absolute and unconditional.[5] By the terms of the guaranty contracts SBA could have made an entire release of the security for the loan and still have recovered from the guarantors. Lack of notice of mortgagor's default in its obligation to insure is unimportant because the guarantors expressly waived notice of any default by the mortgagor. The guarantors have failed to show the breach of any duty owed to them. They have no right to a credit because of the storm damage.

■ Guarantors also argue that by proceeding with the foreclosure action the United States made an election of remedies which precludes judgments against the guarantors. For the rule to apply, a decisive choice, with knowledge of the facts, must be made between inconsistent remedies.[6] There was nothing inconsistent in the actions taken by the United States; and there was neither any requirement for, nor any action amounting to, a choice between them.

We find it unnecessary to consider the arguments of the United States relating to res judicata.

■ The action of the trial court in offsetting the interest on the amount of the credit against the judgment and the interest on the judgment from the date of the sale to the date of the credit is clearly erroneous. Interest can be recovered from the United States only when specific consent has been given.[7] A court is not empowered to award interest against the United States on the ground that such an award is just and equitable.[8]

The motion to dismiss the appeal is denied and the judgment is reversed with directions to disallow the $30,000 credit for storm damage, to enter an appropriate judgment against the guarantors for any deficiency, and to permit the United States to have interest on its judgment.

3. See 15 U.S.C. § 634(b) (3).

4. Newton's reliance on Warrener v. Federal Land Bank of Louisville, 266 Ky. 668, 99 S.W.2d 817, is misplaced. There the mortgagee, at the expense of the mortgagor and for the benefit of itself and the mortgagor, undertook to effect insurance and was held liable for failure to insure at full value. In the instant case the United States did not undertake to insure at the mortgagor's expense.

5. See Joe Heaston Tractor & Implement Company v. Securities Acceptance Corporation, 10 Cir., 243 F.2d 196, 198–199.

6. See Estate Counseling Service, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, 10 Cir., 303 F.2d 527, 531.

7. See Rosenman v. United States, 323 U.S. 658, 663, 65 S.Ct. 536, 89 L.Ed. 535; United States v. Goltra, 312 U.S. 203, 207, 61 S.Ct. 487, 85 L.Ed. 776.

8. United States v. N. Y. Rayon Co., 329 U.S. 654, 658–660, 67 S.Ct. 601, 91 L. Ed. 577.