**UNITED STATES of America**

v.

**Irving DUBRIN et al.**

**Civ. No. SA–72–CA–346.**

United States District Court,
W. D. Texas,
San Antonio Division.

March 20, 1974.

------◆------

Henry Valdespino, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Collins B. Cook, Richard B. Moore, Gresham, Davis, Gregory, Worthy & Moore, Leonard Leighton, San Antonio, Tex., Ennis E. Walden, Dallas, Tex., for defendants.

## ORDER FOR JUDGMENT

CLARY, District Judge.

This suit was instituted by the United States of America to recover from three original defendants, (Irving Dubrin, Lester A. Meis and William P. Burbridge, hereinafter sometimes called guarantors), a balance due on a loan made by the Small Business Administration, (hereinafter called SBA), to Universal Plastics Company of Texas, Inc., (hereinafter called Universal Plastics), now bankrupt, and which loan (note) was guaranteed by two corporate and three individual guarantors. Universal Plastics was declared bankrupt during 1969.

A guaranty form[1] dated April 24, 1968 was executed by Irving Dubrin and Lester A. Meis in order to secure a part of the April 24, 1968 promissory note in the amount of $225,000, executed by Universal Plastics.

The following words were typed on the guarantee form next to Irving Dubrin's signature: "This Guaranty limited to 5 per cent (5%) of loan," and, adjacent to Lester A. Meis' signature was typed the following: "This Guaranty limited to 45 per cent (45%) of loan."

William P. Burbridge executed a separate guaranty instrument dated April 24, 1968. The Burbridge guaranty form was an identical guaranty instrument, (SBA Form 148 (12–66)), as the one executed by the two other guarantors except that Burbridge's guaranty was an unlimited one, that is, guaranteeing 100% of the Universal Plastics note.

In addition to the above guarantees there were two other 100% guarantors of the Universal Plastics note, Surgical Engineering and Research Corporation, a bankrupt, and Shoulder Savers, Inc.

A "Loan Agreement" (SBA Form 161) was executed on April 24, 1968 by the president of Universal Plastics, William P. Burbridge, and, was attested to by the secretary of said corporation, Irving Dubrin.

An "Authorization" (i. e., Loan Authorization) was prepared by SBA and signed only by W. E. Woodman, Regional Director, SBA on March 1, 1968.

One of the conditions agreed to by the borrower corporation in said Loan Agreement, and, which provision was embodied by SBA in the authorization as a condition of the loan is as follows:

"Borrower to execute an agreement providing that during the life of this loan, it will not, without prior written consent of SBA, make any changes in its management team, limited to officers and directors active in the day-to-day operations of the borrower's business. SBA to receive notification 30 days prior to any contemplated change."

A change in the management team of Universal Plastics was effected during 1968 without the written consent of SBA and without the requisite 30 days notice being given to SBA. The SBA subsequently waived the above notice and consent requirement by a letter furnished to the attorney for the borrower, Universal Plastics. The corporation

1.  See Appendix I.

continued its operations under the new management team.

Although the guaranty agreement signed by Meis showed on its face that his liability was limited to 45%, the plaintiff elected to assert and did, in fact, only plead in its complaint for recovery of 10% (of the balance due on the note) against the guarantor Meis. Plaintiff asserted a 5% claim on the balance due on said note against Dubrin, and a claim for 100% of the balance due on the note was asserted in the plaintiff's suit against guarantor Burbridge.

The government's claims against guarantors Dubrin and Meis were settled by compromise on February 28, 1974 for lesser amounts than were asserted by the plaintiff in its complaint against these two defendants. Stipulations for dismissal with prejudice dated February 28, 1974 were filed as to these two defendant-guarantors. The Court then entered orders of dismissal with prejudice dated March 1, 1974 as to Dubrin and Meis. Pre-trial and trial to the Court were held against the remaining defendant on March 4, 1974.

William P. Burbridge claims that he is not liable to plaintiff on his guaranty because at the time the loan to Universal Plastics was made he was president and one of the principal stockholders of the borrower corporation, and, that he executed the guaranty aware of, and in reliance upon the requirement of the SBA Loan Authorization that, in addition to the three 100% guarantees, an additional fully fifty percentum of the loan was guaranteed by other individuals, and, secondly, upon the requirement that no change in management (including officers) of borrower would be made without obtaining at least a thirty day prior approval from SBA by the borrower.

In support of his position the defendant cites the 1971 Supreme Court of Texas case, McKnight v. Virginia, 463 S.W.2d 428, where the Court stated:

"After the terms of a guaranty agreement have been ascertained, the rule of strictissimi juris applies, meaning that the guarantor is entitled to have his agreement strictly construed and that it may not be extended by construction or implication beyond the precise terms of his contract (citing Southwest Savings Association v. Dunagan, et al., 392 S.W.2d 761 (Dallas, Tex.Civ.App., 1965, writ ref. n. r. e.)" and citing other cases thereunder.

The guarantor Burbridge alleges that because the term of the SBA Loan Authorization and Loan Agreement (requiring 30 days prior notice to S.B.A. and said borrower's prior consent before effecting a change in the Universal Plastics management team) has been violated, he is not liable on his guarantee. Burbridge urges, additionally, that he is not liable on the guarantee agreement because plaintiff asserted a claim herein in the amount of ten per cent (10%) against Meis although the guarantee agreement executed by Meis shows that Meis guaranteed forty-five per cent (45%) of the loan. Burbridge urges, thirdly, that under no circumstances is he liable for more than 50% of the loan, because plaintiff asserted only 15% against Dubrin and Meis on their guaranty of 50% and then plaintiff entered into a compromise settlement with the two guarantors for less than 15% of the amount guaranteed by Dubrin and Meis.

The record does not show nor did the testimony show to what extent Burbridge has been prejudiced or damaged by failure of SBA to require the 30 day notice and give its consent before a change was effected in the management team.

■ This Court holds that under the leading case on the subject, Clearfield Trust Co. et al. v. United States, 318 U. S. 363, 63 S.Ct. 573, 87 L.Ed. 838, decided in 1943, and followed ever since, in a situation such as the one before the Court, involving an obligation owed to the United States, the case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, does not apply; therefore, the federal law and not the state law applies in this case.

■ Despite the defendant's objections as raised by his testimony, his pleadings and numerous exhibits, none of his allegations detract from the effects of his guaranty, which guaranty the Court holds to be absolute and unlimited. The only limitation or prohibition that the Court places on the guaranty is that the total principal debt can not exceed the original principal sum of the promissory note, that is $225,000.

The United States Court of Appeals for this Fifth Circuit, considering a situation analagous to the case at bar, pronounced that federal law and not state law applies in such situations. United States v. Wells, 403 F.2d 596, 5 Cir. 1968.

In Wells, supra, the United States District Court considered important questions in the administration of the loan program of the Veterans Administration. A specific question, one of first impression, was whether deficiency judgments should have been granted the United States for balances due following foreclosure of mortgages on property sold to non-veterans under the Vendee Account Loan Program by the Administrator of Veterans Affairs.

The loans in question were foreclosed and the sales were confirmed by orders of the district court, but the deficiency judgments for the balances due were denied in each case. The Fifth Circuit Court reversed, stating at page 597:

"We hold that federal law does apply in such situations."

At page 598 the Court stated:

"We have no clear statutory authority for overriding the state law, nor do we have regulations promulgated pursuant to a federal statute as in United States v. Shimer, 1961, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908, cf. United States v. Yazell, 1966, 382 U.S. 341, 352, 86 S.Ct. 500, 15 L.Ed.2d 404. Nevertheless, we think this is a typical situation where under the Rules of Decision Act, 28 U.S.C.A. 1652, Congress had indicated that federal law should be applied to questions of federal rights and liabilities stemming from a federal program. Cf. Clearfield Trust Co. v. United States, 1943, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L. Ed. 838; " and citing other cases thereunder.

In a case similar to this controversy, the Tenth Circuit held that the obligations of the guarantors under the SBA guaranty under consideration were absolute and unconditional. United States v. Newton Livestock Auction Market, Inc., 336 F.2d 673, 10 Cir. 1964.

In the Newton Livestock Auction case, supra, the SBA mortgagor was required to keep the property (which secured the SBA loan) insured. If it did not, the United States as mortgagee had the option to effect insurance; and the cost incurred was an additional lien against the property. The United States elected not to exercise said option and the insurance lapsed. Since the government assumed the hazard of impairment in value of its collateral, the guarantors assert that, on the theory of assumed risk, they were released, either fully or to the extent of the storm damage.

The Tenth Circuit held, at page 677 as follows:

"Their reliance on 'equities' and general principles of law are unpersuasive because their rights and liabilities are fixed by the contracts of guaranty. *The risk of the guarantors was not increased because their obligations were absolute and unconditional.*" Emphasis supplied.

■ *The risk of the guarantor Dubrin was not increased by the plaintiff because the obligations of this guarantor are absolute and unconditional.* Emphasis supplied.

IT IS ORDERED that plaintiff is entitled to judgment against defendant William P. Burbridge for the balance due on the note; and, it is further ordered that the Assistant United States Attorney prepare a judgment and submit it to defense counsel for agreement only as to calculation of the amount of the judgment so that a final appealable judgment may be entered.

# APPENDIX I

**GUARANTY**

L-737,355-SA-TC
SBA LOAN NO.

April 24 , 19 68

In order to induce Small Business Administration (hereinafter called "SBA") to make a loan or loans, or renewal or extension thereof, to

Universal Plastics Company of Texas, Inc. ,

(hereinafter called the "Debtor"), the undersigned hereby unconditionally guarantees to SBA, its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, of the principal of and interest on and all other

sums payable, or stated to be payable, with respect to the note of the Debtor, made by the Debtor to SBA, dated April 24, 1968 ,

in the principal amount of $ 225,000.00, with interest at the rate of 5½ per cent per annum. Such note, and the interest thereon and all other sums payable with respect thereto are hereinafter collectively called "Liabilities." As security for the performance of this guaranty the undersigned hereby mortgages, pledges, assigns, transfers and delivers to SBA certain collateral (if any), listed in the schedule on the reverse side hereof. The term "collateral" as used herein shall mean any funds, guaranties, agreements or other property or rights or interests of any nature whatsoever, or the proceeds thereof, which may have been, are, or hereafter may be, mortgaged, pledged, assigned, transferred or delivered directly or indirectly by or on behalf of the Debtor or the undersigned or any other party to SBA or to the holder of the aforesaid note of the Debtor, or which may have been, are, or hereafter may be held by any party as trustee or otherwise, as security, whether immediate or underlying, for the performance of this guaranty or the payment of the Liabilities or any of them or any security therefor.

The undersigned waives any notice of the incurring by the Debtor at any time of any of the Liabilities, and waives any and all presentment, demand, protest or notice of dishonor, nonpayment, or other default with respect to any of the Liabilities and any obligation of any party at any time comprised in the collateral. The undersigned hereby grants to SBA full power, in its uncontrolled discretion and without notice to the undersigned, but subject to the provisions of any agreement between the Debtor or any other party and SBA at the time in force, to deal in any manner with the Liabilities and the collateral, including, but without limiting the generality of the foregoing, the following powers:

    (a) To modify or otherwise change any terms of all or any part of the Liabilities or the rate of interest thereon (but not to increase the principal amount of the note of the Debtor to SBA), to grant any extension or renewal thereof and any other indulgence with respect thereto, and to effect any release, compromise or settlement with respect thereto;

    (b) To enter into any agreement of forbearance with respect to all or any part of the Liabilities, or with respect to all or any part of the collateral, and to change the terms of any such agreement;

    (c) To forbear from calling for additional collateral to secure any of the Liabilities or to secure any obligation comprised in the collateral;

    (d) To consent to the substitution, exchange, or release of all or any part of the collateral, whether or not the collateral, if any, received by SBA upon any such substitution, exchange, or release shall be of the same or of a different character or value than the collateral surrendered by SBA;

    (e) In the event of the nonpayment when due, whether by acceleration or otherwise, of any of the Liabilities, or in the event of default in the performance of any obligation comprised in the collateral, to realize on the collateral or any part thereof, as a whole or in such parcels or subdivided interests as SBA may elect, at any public or private sale or sales, for cash or on credit or for future delivery, without demand, advertisement or notice of the time or place of sale or adjournment thereof (the undersigned hereby waiving any such demand, advertisement and notice to the extent permitted by law), or by foreclosure or otherwise, or to forbear from realizing thereon, all as SBA in its uncontrolled discretion may deem proper, and to purchase all or any part of the collateral for its own account at any such sale or foreclosure, such powers to be exercised only to the extent permitted by law.

The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against SBA, by reason of any action SBA may take or omit to take under the foregoing powers.

In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the undersigned, immediately upon the written demand of SBA, will pay to SBA the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned. SBA shall not be required, prior to any such demand on, or payment by, the undersigned, to make any demand upon or pursue or exhaust any of its rights or remedies against the Debtor or others with respect to the payment of any of the Liabilities, or to pursue or exhaust any of its rights or remedies with respect to any part of the collateral. The undersigned shall have no right of subrogation whatsoever with respect to the Liabilities or the collateral unless and until SBA shall have received full payment of all the Liabilities.

The obligations of the undersigned hereunder, and the rights of SBA in the collateral, shall not be released, discharged or in any way affected, nor shall the undersigned have any rights against SBA: by reason of the fact that any of the collateral may be in default at the time of acceptance thereof by SBA or later; nor by reason of the fact that a valid lien in any of the collateral may not be conveyed to, or created in favor of, SBA; nor by reason of the fact that any of the collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way; nor by reason of the fact that any of the Liabilities may be invalid for any reason whatsoever; nor by reason of the fact that the value of any of the collateral, or the financial condition of the Debtor or of any obligor under or guarantor of any of the collateral, may not have been correctly estimated or may have changed or may hereafter change; nor by reason of any deterioration, waste, or loss by fire, theft, or otherwise of any of the collateral unless such deterioration, waste, or loss be caused by the willful act or willful failure to act of SBA.

The undersigned agrees to furnish SBA, or the holder of the aforesaid note of the Debtor, upon demand, but not more often than semiannually, so long as any part of the indebtedness under such note remains unpaid, a financial statement setting forth, in reasonable detail, the assets, liabilities, and net worth of the undersigned.

The term "undersigned" as used in this agreement shall mean the signer or signers of this agreement, and such signers, if more than one, shall be jointly and severally liable hereunder. The undersigned further agrees that all liability hereunder shall continue notwithstanding the incapacity, lack of authority, death, or disability of any one or more of the undersigned, and that any failure by SBA or its assigns to file or enforce a claim against the estate of any of the undersigned shall not operate to release any other of the undersigned from liability hereunder. The failure of any other person to sign this guaranty shall not release or affect the liability of any signer hereof.

This Guaranty limited to 5 per cent (5%) of loan: _Irving Dubrin_

This Guaranty limited to 45 per cent (45%) of loan: Lester A. Meis

    NOTE.--Corporate guarantors must execute guaranty in corporate name, by duly authorized officer, and seal must be affixed and duly attested; partnership guarantors must execute guaranty in firm name, together with signature of a general partner. Formally executed guaranty is to be delivered at the time of disbursement of loan.

**(LIST ON REVERSE SIDE COLLATERAL SECURING THE GUARANTY)**

SBA FORM.148 (12-66) EDITION OF 11-62 WILL BE USED UNTIL STOCK IS EXHAUSTED