**Leasing Service Corporation v. Benson**

*Sheryl L. Auerbach,* for plaintiff.
*Leonard M. Klehr* and *Dinah Bogart Engel,* for plaintiff.

IVANOSKI, *J.,* May 27, 1982—This matter comes before the court on plaintiff, Leasing Service Corporation's (hereinafter referred to as "Leasing Service") petition to declare purported demand to enter satisfaction a nullity and defendant, John W. Benson, Jr.'s (hereinafter referred to as Benson) answer which contains counter-petitions. This court declared the satisfaction demand a nullity and transferred to another Judge a counter-petition to open judgment which was based upon additional and alleged newly discovered facts. The counter-petitions for satisfaction, relief from judgment and restitution were denied without prejudice. Subsequently, defendant filed the instant appeal and in accordance

with Pa.R.A.P. §1925(b), the following are listed as Statements of Matters Complained of on Appeal:

I. Petition to Declare Satisfaction Demand A Nullity

The judicial determination that the obligation underlying the guaranty agreement, the basis for the judgment confessed against Benson, is discharged in full because the misconduct of plaintiff-respondent, Leasing Service Corporation (hereinafter Leasing Service) should give rise to the conclusive legal presumption that the property securing both the principal obligation and the guaranty was worth at least the full amount of the debt of Benson, the Guarantor, and cause the judgment against Benson to be satisfied in full pursuant to 42 Pa.C.S. §8104.

II. Counter-Petition for Satisfaction, Relief From Judgment and Restitution

The counter-petitions are based on the judicial determination that the obligation underlying the guaranty of Benson is discharged in full because of the misconduct of Leasing Service, which determination was not made until after the petition to open was denied by the Honorable Vito F. Canuso and an appeal thereof was taken to the Superior Court, and, therefore, it was not a matter in dispute in the Appeal and, pursuant to Pa.R.A.P. §1701(c), should not operate to prevent the lower court from proceeding further with the counter-petitions and the issues presented therein.

## FACTS

The pertinent facts are as follows:
On March 23, 1977, Fairchild Incorporated entered into an Equipment Lease Agreement (Lease)

with Appalachian Pocahontas, whereunder expensive mining equipment was leased to Appalachian Pocahontas Coal Company (Appalachian Pocahontas). The lease was assigned, with the knowledge and consent of Appalachian Pocahontas and Benson, from Fairchild Incorporated to plaintiff, Leasing Service. In addition, as an integral part of this transaction, defendant Benson, a businessman, attorney and real estate developer, as well as a major shareholder of Appalachian Pocahontas, personally guaranteed Appalachian Pocahontas' obligation to Leasing Service.

Appalachian Pocahontas subsequently defaulted on the Lease. In accordance with the parties' agreement, Leasing Service accelerated all of the rental payments due under the Lease. Immediately thereafter, Leasing Service made demand on guarantor-defendant Benson to pay the full amount of the unpaid balance and other charges.

At no time did Leasing Service ever rescind or abrogate its Equipment Lease Agreement with Appalachian Pocahontas or its guaranty from appellant Benson. Rather, Leasing Service continued to demand payment from appellant-guarantor Benson.

Payment not having arrived by the end of March, 1979, Leasing Service caused judgment against defendant Benson to be entered in an amicable action in assumpsit. The judgment was confessed by counsel for Leasing Service appearing as counsel for defendant pursuant to the authority conveyed by the warrant contained in the Guaranty. Shortly thereafter, defendant filed a petition to strike and/or open, which was denied by the Honorable Vito Canuso.*

---

*Defendant Benson appealed both the order of Judge Canuso dated March 4, 1980, and the order of Judge Ivanoski dated March 4, 1982. The Superior Court of Pennsylvania affirmed both lower court orders on July 29, 1983.

After repeated efforts to sell the equipment, over Benson's objections, Leasing Service was eventually authorized to sell the equipment by order of a United States bankruptcy court in West Virginia. At the sale, which occurred on October 17, 1980, Leasing Service was the sole bidder and purchased the equipment for approximately $80,000. Subsequently, on April 23, 1981, the bankruptcy court issued an order denying Leasing Service's deficiency claim against the borrower, Appalachian Pocahontas.

On July 1, 1981, counsel for plaintiff Leasing Service received a letter dated June 30, 1981, from counsel for defendant Benson, demanding that Leasing Service mark satisfied the judgment herein, purporting to rely on 42 Pa.C.S. §8104. And subsequently, counsel for defendant filed the Petition to declare Purported Demand to Enter Satisfaction a Nullity so as to protect themselves from the imposition of liquidated damage penalties under 42 Pa. C.S. §8104 if satisfaction is not entered.

## DISCUSSION

Section 8104 provides:

## Statute

Section 8104.  Duty of judgment creditor to enter satisfaction.

"(a)  General rule.—A judgment creditor who has received satisfaction of any judgment in any tribunal of this Commonwealth shall at the written request of the judgment debtor, or of anyone interested therein, and tender of the fee for entry of satisfaction, enter satisfaction in the office of the clerk of the court where such judgment is outstanding, which satisfaction shall forever discharge the judgment.

"(b) Liquidated damages.—A judgment creditor who shall fail or refuse for more than 30 days after written notice in the manner prescribed by general rules to comply with a request pursuant to subsection (a) shall pay to the judgment debtor as liquidated damages 1% of the original amount of the judgment for each day of delinquency beyond such 30 days, but not less than $250 nor more than 50% of the original amount of the judgment. Such liquidated damages shall be recoverable pursuant to general rules, by supplementary proceedings in the manner in which the judgment was entered."

The statute and its predecessor statutes were analyzed by a Superior Court panel in a slip opinion decision rendered on December 4, 1981. In Busy Beaver Building Centers, Inc. v. Harry J. Tueche and Carmen Tueche the debtor-appellant sought to have a judgment record marked satisfied and to recover liquidated damages from creditor-appellee for its failure to satisfy same.

The court stated at page 11:

"It seems clear, upon an examination of these sections, that the term 'satisfaction' as used in 42 Pa.C.S. §8104, in the phrase, '(h)aving received satisfaction,' refers to a situation in which a creditor has received payment of the underlying debt obligation. . . ."

We hold, in light of the clear import of these statutes, that the phrase 'a judgment creditor who has received satisfaction of any judgment. . .' must be interpreted to mean that the creditor has received full payment of the underlying debt instrument. The context of the statute, as well as its history, clearly requires that such meaning be given to the term 'satisfaction' here. See Treaster v. Township of Union, 430 Pa. 223, 242 A.2d 252 (1968).

Although we hold that the statute requires full payment, we do not rule out the possibility of a creditor receiving satisfaction from a levy, so long as the creditor receives the amount it is owed.

In interpreting the statute in this way, we adhere to the well settled principle of construction that the language of a statute must be read in a sense which harmonizes with the subject matter and its general purpose and object. Swartley v. Harris, 351 Pa. 116, 119, 40 A.2d 409, 411 (1945)."

The obligation of a principal debtor and of a guarantor are *not* coextensive. The obligations of a guarantor can be greater than the obligation of the principal debtor. Paul Revere Protective Life Ins. Co. v. Weis, p.14, C.A. No. 80-2709 (slip op. E.D.Pa. filed 6/11/81) (Exhibit "5" of plaintiff's memorandum). See also authorities cited at page 14 of Revere. As defendant Benson himself recognized in his memorandum in support of his Motion for Stay filed with this court on March 6, 1980, "the nature and extent of liability of a guarantor depends on the terms of the contract of guaranty".

One who, like Benson, unconditionally guarantees an indebtedness is not released or discharged from that guarantee by virtue of any purported lack of the secured creditor's diligence with respect to, or release or impairment of collateral. Nation Wide, Inc. v. Scullin, 256 F.Supp. 929 (D.N.J. 1966), aff'd 377 F.2d 554 (3d Cir. 1967); United States v. Newton Livestock Auction Market, Inc., 336 F.2d 673 (10th Cir. 1964); Leslie Fay, Inc. v. Rich, 478 F.Supp. 1109, 1116 (S.D.N.Y. 1979); Walter E. Heller & Company v. Cox, 343 F.Supp. 519, 526 (S.D.N.Y. 1972); United States v. Shirman, 41 F.R.D. 368, 372-73 (1966); United States v. Basil's Family Supermarket, Inc., 259 F.Supp. 139, 141-142 (S.D.N.Y. 1966); Indianapolis Morris Plan

Corp. v. Karlen, 28 N.Y.2d 30, 319 N.Y.S.2d 831, 268 N.E.2d 632 (1971). In Paul Revere, supra, at 10, the court noted that the terms of a guarantee supersede generalized precepts of the common law that might control a guarantor relationship in the absence of a written guarantee which addresses a particular subject:

"Defendants are correct in noting that under certain circumstances if the plaintiffs have wasted their security, then the obligation of the defendant guarantors would be reduced to the extent that they were injured. (citation omitted). However, *because the guaranty agreement in the instant case is an absolute and unconditional one* and because the contract of a guaranty did not require the plaintiffs to take action, the foregoing rule of law has no applicability." (Emphasis added.)

In particular, where a guarantor controls the debtor, the guarantor will not be discharged absent an express agreement, by failure of a creditor to maximize the value received from collateral. Leslie Fay, 478 F.Supp. at 1116.

Benson's Guaranty *explicitly provides* that Benson's duty as a guarantor is "*direct* and *unconditional*". The Guarantee explicitly declares that Benson is responsible for the entire sum regardless of any "repossession of property". Further Benson consents to any arrangements made concerning the disposition of the collateral. As the written Guaranty states, *inter alia:*

"To induce you to enter into one or more security agreements, including but not limited to conditional sales agreements, *leases* . . . (all of the foregoing hereinafter called "Security Obligations") . . . *we,* the undersigned . . . *agree to be without deduction by reason of set-off, defense or counterclaim of subject . . . directly liable to you* for the due perfor-

mance of all such Security Obligations . . . *We* further waive notice of and *hereby consent* to any agreement or arrangements whatever with Subject or anyone else, including without limitation, agreements and arrangements for payment extension, subordination, composition, arrangement, discharge or release of the whole or any part of the Security Obligations, or for *releases of collateral* and/or other guarantors, *or for the* change or *surrender of any and all security,* or for compromise, whether by way of acceptance of part payment or of returns of merchandise or of dividends or in any other way whatsoever, and the same shall in no way impair our liability hereunder. *The liability hereunder of each of the undersigned is direct and unconditional* and may be enforced without requiring you first to resort to any other right, remedy or security and *shall survive any repossession of property* whether or not such constitutes an election of remedies against Subject; *nothing shall discharge or satisfy our liability hereunder except the full performance and payment of all Security Obligations with interest. We shall have* no right of subrogation, reimbursement or indemnity whatsoever and *no right of recourse to or with respect to any assets or property of Subject or to any collateral for Security Obligations, unless and until all Security Obligations shall have been paid and performed in full. . . . We agree that if we are Subject shall at any time become insolvent, or make a general assignment, or if a petition in bankruptcy or any insolvency or reorganization proceeding shall be commenced by, against or in respect of us or Subject, any and all of our obligations shall at your sole option, forthwith become due and payable without notice.* This instrument is a continuing guaranty and shall *continue in full force and effect,* notwithstand-

ing the death of any of us, *until the full* performance, *payment* and discharge *of all* Security *Obligations* and thereafter until actual receipt by you from us of written notice of termination; such termination shall be applicable only to transactions having their inception thereafter. Termination by one or more of us shall not affect the liability of such of us as do not give such notice of termination." (Emphasis added.)

Thus, the language of the Guaranty document dictates that guarantor Benson must satisfy in full all of his obligations to Leasing Service even if the West Virginia bankruptcy court's discharge of Appalachian Pocahontas' liability were to be upheld on appeal.

The Guaranty specifies that Benson's obligation is discharged only when all the rental payments in the Lease are paid, no matter what the effect of repossession or sale of the equipment is upon the liability of Appalachian Pocahontas, regardless of potential defenses of Appalachian Pocahontas. Therefore, Benson's guaranty obligations are absolutely unaffected by the decision of the West Virginia bankruptcy court.

The agreement between Leasing Service and defendant Benson demonstrates that defendant Benson pledged his guarantee absolutely and without limitation in order to induce Leasing Service to advance substantial sums to defendant Benson's company for the purchase of equipment. However harsh a bargain it may appear with hind sight, defendant Benson's obligation was voluntarily assumed and made absolute. Nation Wide, Inc. 256 F.Supp. at 932.

For these reasons, this court held that the demand for satisfaction by the defendant-guarantor

was a nullity and that plaintiff-creditor would suffer no penalties for its failure to satisfy the judgment.

The second allegation of error presented in the statement of matters complained of involves this court's denial, without prejudice, of the counter-petitions for satisfaction, relief from judgment and restitution. In its statement, defendant admits that the counter-petitions are based on the theory that the West Virginia judicial determination discharged the obligation underlying the guaranty of Benson. This court, in effect, decided the same issue against defendant when it chose to grant plaintiff's petition to declare the demand for satisfaction a nullity. This court decided that the terms of the Guaranty Agreement between plaintiff and defendant were clear and unambiguous and were not coextensive with the terms involved in the original debt between plaintiff and the bankrupt. The fact that this decision was rendered in West Virginia subsequent to an appeal taken by defendant concerning the denial of its petition to open the judgment does not warrant a finding that these facts should be defined as facts beyond the limit of matters in dispute and, therefore, capable of "further proceeding" by a lower court in accordance with Pa. R.A.P. §1701(c). Section (a) of the same rule provides that:

"(a) General rule. Except as otherwise prescribed by these rules, after an appeal is taken or a petition for allowance of appeal is filed in a matter or review of a quasijudicial order is sought, the lower court or other government unit may no longer proceed further in the matter."

Generally, therefore, after an appeal has been taken, there can be no further proceeding by the lower court.

In the instant case, a default judgment was entered against defendant; defendant's petition to

open the judgment was denied by another lower court judge and an appeal of that denial was taken.

Subsequent to the appeal being filed, a decision was rendered in West Virginia which defendant now feels is relevant to the gravaman/debt between plaintiff and defendant.

In accordance with section (a) this court simply declined to consider the relevancy of the West Virginia decision to the case in its present status.

The case was before this court for a determination with regard to the validity of a satisfaction demand, made by defendant while an appeal was pending. A decision was requested by plaintiff who sought to protect its position in light of the new statute and any other issue not relevant to such a determination is beyond the jurisdiction of this court and therefore the court so ruled in its order of March 4, 1982.