**John P. REGAN, Jr. and Lois B. Regan, Plaintiffs,**

v.

**U.S. SMALL BUSINESS ADMINISTRA-TION and Trust Company Bank of Augusta f/k/a The First National Bank of Thomson, Defendants.**

**Civ. A. No. CV187–002.**

United States District Court,
S.D. Georgia,
Augusta Division.

Jan. 12, 1990.

Mark Thomas Sallee, Atlanta, Ga., for plaintiffs.

John P. Wills, Thomson, Ga., and Henry L. Whisenhunt, Jr., Asst. U.S. Atty., Augusta, Ga., for defendants.

## ORDER

BOWEN, District Judge.

Plaintiffs bring this suit seeking to be released from a Guaranty and Deed to Secure Debt which they executed on behalf of their employer, Bishop Tile Company, Inc., in favor of The Trust Company Bank of Augusta f/k/a The First National Bank of Thomson ("lender"). On November 3, 1983, lender with the participation of defendant U.S. Small Business Administration ("SBA") made SBA loan No. GP–170610–30–01–ATL to Bishop Tile Company, Inc. in the amount of $80,000.00. As security for the SBA loan, plaintiffs executed a Guaranty together with a Deed to Secure Debt dated November 3, 1983 in favor of lender. The property conveyed to lender pursuant to the Deed to Secure Debt was plaintiffs' personal residence. At the time the documents associated with the SBA loan were executed, plaintiff John P. Regan, Jr. was the on-site construction supervisor for Bishop Tile Company, Inc. and plaintiff Lois B. Regan was the job estimator for Bishop Tile Company, Inc.

Defendant SBA counterclaims seeking a judgment of $43,567.71 together with interest and all costs of this action against the plaintiffs. SBA contends that the Guaranty executed by the plaintiffs was unconditional. When the loan went into default by reason of nonpayment by Bishop Tile Company, Inc., the lender accelerated the maturity of the loan and declared the entire unpaid balance due and payable. The lender transferred and assigned all of its right, title and interest in the note, Guaranty and Deed to Secure Debt to SBA. The plaintiffs have failed and refused to pay the indebtedness evidence by the note.

Plaintiffs have filed a "motion for judgment on the pleadings" with the Court. However, as noted by defendants, the plaintiffs rely on matters outside of the pleadings, such as affidavits, exhibits and interrogatories, in support of their motion. Accordingly, in accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the plaintiffs' motion will be treated as one for summary judgment and disposed of as provided in Rule 56. Also, before the Court is defendant SBA's motion for summary judgment.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of showing that there is no genuine dispute as to any material fact in the case. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368 (11th Cir.1982). The party

moving for summary judgment may meet this burden by showing that the non-movant has failed to make a showing sufficient to establish the existence of an element essential to the non-movant's case, and on which the non-movant will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If there is any factual issue in the record that is unresolved by the motion for summary judgment, then the Court may not decide that matter. *See Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). All reasonable doubts must be resolved in favor of the party opposing summary judgment. *Casey Enterprises v. American Hardware Mutual Insurance Co.,* 655 F.2d 598, 602 (5th Cir. 1981). When, however, the moving party's motion for summary judgment has pierced the pleadings of the opposing party, the burden then shifts to the opposing party to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1985). This burden cannot be carried by reliance on the pleadings, or by repetition of the conclusory allegations contained in the complaint. *Morris v. Ross,* 663 F.2d 1032, 1033 (11th Cir.1981). Rather, the opposing party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. Pursuant to an order of the Court dated April 7, 1989, the parties were instructed to file their motions for summary judgment and briefs in support thereof within thirty days from the date of the order, and each party was given an additional ten days from that date for the filing of their response brief to the opposing party's motion for summary judgment. The nonmovants having had a reasonable opportunity to respond to the motion, I will now rule on plaintiffs' and defendant's motions for summary judgment.

In support of their motion for summary judgment, plaintiffs contend that under Georgia law, plaintiffs should be released from their Guaranty in accordance with the theory of novation or in the alternative the theory of increased risk. In accordance with count two of their complaint, plaintiffs show that the lender Bank made loans to Bishop Tile Company subsequent to the SBA loan. One of these subsequent loans was secured by the company's accounts receivables which also secured the SBA loan. Plaintiffs contend that the lender bank did not have approval of the SBA when the loans were made and that these subsequent loans violated the SBA loan and the SBA loan security agreement. Plaintiffs argue that since lender bank made subsequent loans to Bishop Tile Company without the approval of SBA, plaintiffs are relieved from their liability as guarantors on the SBA loan because of either novation or increase in risk.

■ Although plaintiffs rely solely on Georgia law in fashioning their arguments, "... federal law governs questions involving the rights of the United States arising under nationwide federal programs." *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). In *Kimbell,* the United States Supreme Court, applying the principles explained in *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–367, 63 S.Ct. 573, 574–575, 87 L.Ed. 838 (1943), held that "[t]he SBA and FHA unquestionably perform federal functions within the meaning of *Clearfield." United States v. Kimbell Foods,* 440 U.S. at 726, 99 S.Ct. at 1457. Therefore, the rights and liabilities of the SBA are derived and governed by federal law. *United States v. Kimbell Foods, Inc.,* 440 U.S. at 726, 99 S.Ct. at 1457; *Gunter v. Hutcheson,* 674 F.2d 862, 868 (11th Cir.1982) and *United States v. Dubrin,* 373 F.Supp. 1123, 1125 (W.D.TX. 1974).

■ Having determined that federal law does apply, the Court must then give content to the federal law. Controversies directly affecting the operation of federal programs do not always require application of a uniform federal rule. Three factors should be considered by a court in determining whether to formulate a uniform federal rule or adopt state law as the federal rule of decision:

> whether the federal program was one which by its nature required nationwide

**1342**

uniformity, whether adopting the state law would frustrate the specific objectives of the federal program, and whether applying a federal rule would disrupt commercial relations predicated on state law.

*Gunter v. Hutcheson,* 674 F.2d at 868. In the instant case, plaintiffs signed a SBA standard form Guaranty agreement. The Guaranty agreement states that "the Undersigned hereby unconditionally guarantees to Lender [First National Bank of Thomson], its successors and assigns, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, the principal of and interest on and all other sums payable, or stated to be payable...." Federal courts have held that such agreements are absolute and unconditional. *United States v. Outriggers, Inc.,* 549 F.2d 337 (5th Cir.1977); *United States v. Southern Cycle Access., Inc.,* 567 F.2d 296 (5th Cir.1978); *United States v. Newton Livestock Auction Market, Inc.,* 336 F.2d 673 (10th Cir.1964); *United States v. Dubrin,* 373 F.Supp. 1123 (W.D.Tx.1974); *United States v. Shirman,* 41 F.R.D. 368 (N.D. Ill.1966).

In *Dubrin,* the court held that neither the fact that borrower's management team was changed without giving a 30–day notice to the SBA as required by the SBA loan agreement, nor the fact that the government asserted and settled claims against co-guarantors for percentages of the loan less than percentages guaranteed, relieved the defendant from the SBA guaranty agreement. *United States v. Dubrin,* 373 F.Supp. at 1126. The *Dubrin* court held that the risk of the defendant guarantor "... was not increased by the plaintiff because the obligations of this guarantor are absolute and unconditional." *United States v. Dubrin, Id.*

In *Newton,* the defendant guarantors argued that they were released, either fully or to the extent of the storm damage to collateral, by the action of the United States in permitting insurance on the collateral to lapse. *United States v. Newton Livestock Auction Market, Inc.,* 336 F.2d 673 (10th Cir.1964). The court held that

"[t]he risk of the guarantors was not increased because their obligations were absolute and unconditional." *United States v. Newton Livestock Auction Market, Inc.,* 336 F.2d at 677.

Turning now to the instant case, it becomes apparent that the plaintiffs' motion for summary judgment cannot be granted. The SBA standard form guaranty agreement signed by the instant case plaintiffs is very similar, if not identical, to the guaranty agreements executed in the cases discussed previously. Pursuant to the guaranty agreement, plaintiffs became absolutely and unconditionally liable in the event of nonpayment by their employer, Bishop Tile Company, Inc. The fact that the accounts receivable of Bishop Tile Company were used to secure additional loans without the consent of the SBA, as required by the SBA loan and security agreements, does not, in any way, affect plaintiffs liability under the guaranty agreement. Moreover, the notice provision at issue in this case is for the benefit of the SBA, not guarantors who are unconditionally liable under the guaranty agreement. Accordingly, plaintiffs' "motion for judgment on the pleadings" or summary judgment motion is DENIED.

Next, I will consider defendant SBA's motion for summary judgment. Plaintiffs' complaint alleges six grounds for releasing them from the guaranty they executed in connection with the SBA loan. Count one of the complaint seeks a release based upon novation due to plaintiffs' allegations that they did not have an opportunity to read or understand the guaranty or any of the other documents associated with the SBA loan. Plaintiffs also contend that they signed the guaranty because they were told by William B. Jernigan, another guarantor, that he executed similar instruments. The Authorization and Loan Agreement clearly states that the guaranty executed by Jernigan is unsecured, while plaintiffs guaranty is secured by a second lien on their residence. At most, the pleadings and affidavits of plaintiffs show an agreement between Jernigan and plaintiffs

as to the collateral being offered to secure the loan. However, the plaintiffs have neither alleged nor shown that the lender and SBA agreed to or even had knowledge of the informal agreement between plaintiffs and Jernigan. In support of their argument for novation, plaintiffs rely on O.C. G.A. § 10–7–21 which provides, "[a]ny change in the nature or terms of a contract is called a "novation"; such novation, without the consent of the surety, discharges him." However, plaintiffs fail to point to any "change in the nature or terms" of the guaranty agreement at issue in this case. Plaintiffs' attempts to subject the defendants to the terms of the informal agreement, crafted by plaintiffs and Jernigan, must be rejected.

▪ Moreover, in *United States v. Outriggers, Inc.*, 549 F.2d 337 (5th Cir.1977) the fifth circuit held that the SBA's acceptance of an unconditional guaranty agreement, with the signature of one potential guarantor deleted, did not release the two defendants, who signed the agreement prior to the deletion. Like the guaranty agreement in the instant case, the *Outriggers* guaranty agreement was a SBA standard form guaranty agreement.[1] The guaranty agreement in the instant case provides:

> The undersigned hereby grants to Lender full power, in its uncontrolled discretion and without notice to the undersigned ... to deal in any manner with the liabilities and the collateral, including, but without limitation, the generality of the foregoing, the following powers:
> \* \* \* \* \* \*
> (d) To consent to the substitution, exchange, or release of all or any part of the collateral whether or not the collateral, if any, received by Lender upon any such substitution, exchange, or release shall be of the same or of a different

character or value than the collateral surrendered by Lender;

\* \* \* \* \* \*

> The obligations of the undersigned hereunder shall not be released, discharged or in any way affected, nor shall the undersigned have any rights or recourse against Lender, by reason of any action Lender may take or omit to take under the foregoing powers.

Therefore, it is clear from the express provisions of the guaranty agreement that the plaintiffs "did not condition their liability upon the execution of guaranties by any other person." *United States v. Outriggers, Inc.*, 549 F.2d at 339.

Plaintiffs also allege in count one that they did not have an opportunity to read nor understand the guaranty and security deed which they executed in connection with the SBA loan. However, Georgia case law holds that "[o]ne who signs a written document without reading it, unless prevented from doing so by some fraud or artifice ... is chargeable with knowledge of its contents." *Musgrove v. Musgrove*, 213 Ga. 610, 612, 100 S.E.2d 577 (1957); citing *Smith v. Smith*, 191 Ga. 675, 13 S.E.2d 798; *Ketchem v. Ketchem*, 191 Ga. 140, 11 S.E.2d 788; and *Bach v. Phillips*, 200 Ga. 308, 37 S.E.2d 407. In addition, "[o]ne who can read must read or show a sufficient reason for having been prevented from doing so ... [o]therwise he is bound by the terms of the ..." agreement. *Mesa v. Poole*, 127 Ga.App. 426, 428, 193 S.E.2d 925 (1972). In the instant case, plaintiffs have not shown any sufficient reason for not reading the guaranty agreement. Plaintiffs have admitted that they are literate. Accordingly, plaintiffs are bound by the terms of the guaranty agreement.

---

1. In reaching its decision, the court stated the following:

   It is clear by the express terms of the agreement that the defendants agreed to be unconditionally bound upon the principal debtor's default. It is also clear from the express terms that each guarantor agreed to allow SBA unfettered discretion to release, substi-

   tute, or exchange any part of the collateral, and to remain personally liable for the entire amount of the loan, notwithstanding any action by SBA, such as SBA's release of any other guarantor, or the failure of SBA to secure a guarantee from any other person.
   *United States v. Outriggers, Inc.*, 549 F.2d at 339.

For the reasons previously discussed with respect to plaintiffs' motion for summary judgment, I can not endorse the grounds for relief set forth in count two of plaintiffs' complaint. By executing the guaranty agreement, plaintiffs became absolutely and unconditionally liable as guarantors. The same analysis is also applicable to count three of plaintiffs' complaint where it is alleged that Bishop Tile Company, Inc., on the advice of lender, made an SBA loan payment after it had become insolvent. Plaintiffs argue that this payment increased the risk to the plaintiffs and therefore serves as a basis for releasing them from the guaranty. As previously discussed, plaintiffs' risk has not increased because as guarantors, under the terms of the SBA guaranty agreement, their obligation is absolute and unconditional. *United States v. Dubrin,* 373 F.Supp. at 1123.

■ On July 27, 1984, Bishop Tile Company, Inc. purchased an office building and acreage for $78,500.00 from defendant Trust Company Bank of Augusta f/d/a First National Bank of Thomson ("lender"). In connection with the purchase, Bishop Tile Company executed a deed to secure debt in favor of lender, which secured a $55,000.00 promissory note given in exchange for the office building. The deed to secure debt contained an "open end" or "dragnet" provision which states that the deed will also secure "... such other and further indebtedness as may now be, or from time to time hereafter shall become, owing to the party of the second part [lender] by the party of the first part [Bishop Tile Company, Inc.]...." Lender foreclosed on the office building owned by Bishop Tile Company, in May, 1986, for a price of $53,329.00. In count four, plaintiffs claim that they should be released from their guaranty due to the fact that lender did not

"confirm" the foreclosure pursuant to O.C.G.A. § 44–14–161.[2]

Although federal law governs the determination of rights and obligations of the SBA, federal courts have adopted the Georgia confirmation statute, when applicable. *United States v. Dismuke,* 616 F.2d 755 (5th Cir.1980). Georgia law prohibits the entertaining of a suit for a deficiency judgment when there has been no compliance with the requirement for judicial confirmation of the foreclosure sale. However, this conclusion does not end the inquiry into the facts of the instant case. Here, the plaintiffs are contending that the "dragnet" or "open ended" provision of the July 27, 1984 loan, coupled with the Georgia confirmation statute, prohibits the SBA from foreclosing on the deed given by plaintiffs as guarantors of the November 3, 1983 SBA loan, since the lender failed to "confirm" the foreclosure sale of the office building given as security for the July 27, 1984 loan. In *Vaughn & Co. v. Saul,* 143 Ga.App. 74, 77, 237 S.E.2d 622 (1974), the Georgia court of appeals was faced with almost an identical situation and stated:

> We hold that the present action is not to recover a deficiency judgment on the debt for which foreclosure was had, but to recover on a separate, subsequent and different note made a year later for a different debt and for which a conveyance of other property was made as security. The note sued upon is a separate transaction from that which was the basis for foreclosure....

See also *Jerkins v. Savannah Valley Production Credit Association,* 157 Ga.App. 652, 278 S.E.2d 431 (1981); *Baker v. NEI Corporation,* 144 Ga.App. 165, 241 S.E.2d 4 (1977); and *Stamps v. Ford Motor Co.,* 650 F.Supp. 390 (N.D.Ga.1986). Therefore, the failure of the instant case lender to "confirm" the foreclosure of the office

---

**2.** The Georgia confirmation statute, O.C.G.A. § 44–14–161(a), provides:

   When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action

may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

building does not prohibit the SBA from foreclosing upon the security extended by plaintiffs in connection with the SBA loan. "... [I]f there are separate debts arising from separate contractual obligations, failure to confirm the foreclosure arising from one of the obligations does not bar an action on the separate obligation, even if the obligations relate to the same subject matter." *Surety Managers, Inc. v. Stanford,* 633 F.2d 709 (5th Cir.1980); citing *Murray v. Hasty,* 132 Ga.App. 125, 207 S.E.2d 602 (1974).

■ With respect to count five, plaintiffs allege that lender has not properly applied money collected from the accounts receivable of Bishop Tile Company to the SBA loan. Plaintiffs further contend that if the accounts receivable had been properly applied, the SBA loan would have been paid in full. Neither party has provided the Court with sufficient documentation to resolve the factual issues regarding this count.

Outside of the pleadings, the only documentation submitted by plaintiffs is the affidavit of their attorney Mark Thomas Sallee which states that during a telephone conversation in July of 1986, "Mr. Riley Stamey [an employee of Trust Company Bank] stated that Defendant Trust Company Bank of Augusta f/k/a The First National Bank of Thomson had collected approximately $70,000.00 in accounts receivables from Bishop Tile Company, Inc." Defendant SBA, on the other hand, relies upon quoted portions of the defendant bank's answers to plaintiffs' interrogatories, which have not been filed with the Court and are not a part of the record in this case. Therefore, questions of fact still remain as to the amount of accounts receivable collected and applied to the SBA loan. Accordingly, resolution of this issue through a summary judgment motion is not proper.

■ In count six, plaintiffs allege that they should be released from the guaranty due to the bank's failure to obtain a fair price for Bishop Tile Company's assets, specifically in connection with the foreclosure sale of the office building which

was given to secure a separate loan. As discussed earlier, the office building secured a totally separate loan which the bank made to the Bishop Tile Company without SBA participation. The guaranty executed by the plaintiffs secured the SBA loan. Thus, whether or not the bank obtained the fair market value of the office building would not affect plaintiffs' obligation under the guaranty to secure the SBA loan. In addition, as discussed previously, the guaranty executed by plaintiffs is unconditional and gives the bank "uncontrolled discretion" in dealing with the collateral without affecting the guarantors obligation under the guaranty. See *United States v. Outriggers, Inc.,* 549 F.2d 337 (5th Cir.1977); *United States v. Southern Cycle Accessories, Inc.,* 567 F.2d 296 (5th Cir.1978).

■ With respect to SBA's counterclaim seeking a judgment against plaintiffs pursuant to their guaranty made in connection with the SBA loan, the plaintiffs concede that a loan was made to Bishop Tile Company in participation with the SBA. The plaintiffs also admit that they signed the guaranty agreement and deed to secure debt on the SBA loan. SBA has produced documentation showing that the Bishop Tile Company has defaulted on the loan, that the loan has been accelerated and that the bank has assigned all right, title and interest in the loan documents, including the guaranty and deed of trust, to the SBA. Therefore, the SBA has produced documentation sufficient to establish that plaintiffs are liable under the SBA guaranty agreement for the balance of the loan subsequent to Bishop Tile Company's default. *Southern Glass and Builders Supply Co. v. United States,* 398 F.2d 109 (5th Cir. 1968).

Accordingly, plaintiffs' motion for judgment on the pleadings/summary judgment is DENIED. SBA's motion for summary judgment is GRANTED to the following extent: plaintiffs' complaint is dismissed except as to count five, and plaintiffs are liable to the SBA under the guaranty agreement and deed of trust, for an amount to be determined in the future.

SBA is ORDERED to submit documentation to the Court establishing the collection and application of Bishop Tile Company's accounts receivable to the SBA loan. The SBA is further ORDERED to submit to the Court an affidavit from the SBA, along with supporting documentation, containing a detailed calculation of the total amount of money, both principal and interest, due from plaintiffs pursuant to the guaranty agreement and deed of trust. The SBA is ORDERED to make ALL submissions to the Court within twenty (20) days from the date this order is entered. The plaintiffs will be given an additional ten (10) days, from the date the SBA's submissions are filed with the Clerk of Court, to file any objections to the SBA's calculation of the outstanding loan balance. If no objections are filed, judgment will be entered for the SBA in accordance with the affidavit which it has been ordered to submit.